DAVID H. KRAMER, State Bar No. 168452
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (866) 974-7329
Email: dkramer@wsgr.com

Attorneys for Plaintiff
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC, a Delaware limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SERPAPI, LLC, a Texas Corporation,<br><br>　　　　　Defendant. | Case No.: 25-10826<br><br>**COMPLAINT FOR:**<br><br>**1.　Circumvention of Technological Measures (17 U.S.C. § 1201(a)(1)(A))**<br><br>**2.　Trafficking in Technology Designed for Circumvention of Technological Measures (17 U.S.C. § 1201(a)(2))**<br><br>**JURY TRIAL DEMANDED** |

1.  Google LLC's search services are the product of enormous investments of human and financial capital. Through lessons learned from decades of experimentation, enhancements, and expenditures, Google has developed first-in-class methods for understanding what its users are looking for, and locating and recommending relevant content from the vastness of the World Wide Web.

2.  To enhance its popular search engine and assist users in finding what they are looking for, Google incorporates a range of licensed copyrighted content in its search results pages for various services. For example, Knowledge Panels that provide detailed information in response to a specific query often contain copyrighted photographs that Google licenses from third parties. Google relies upon myriad pieces of copyrighted content to create Google Maps, including but not limited to a variety of third-party images. Similarly, Google Shopping works closely with merchant partners to provide users with the best information about products that they may want to buy, including merchant-supplied pictures.

3.  Defendant SerpApi, LLC ("SerpApi") offers services that "scrape" this copyrighted content and more from Google, using deceptive means to automatically access and take it for free at an astonishing scale and then offering it to various customers for a fee. In doing so, SerpApi acquires for itself the valuable product of Google's labors and investment in the content, and denies Google's partners compensation for their works.

4.  In an effort to halt this harmful misappropriation and protect its partner relationships, Google developed and deployed a technological measure, known as SearchGuard, that restricts access to its search results pages and the copyrighted content they contain. So that it could continue its free riding, however, SerpApi developed a means of circumventing SearchGuard. With the automated queries it submits, SerpApi engages in a wide variety of misrepresentations and evasions in order to bypass the technological protections Google deployed. But each time it employs these artifices, SerpApi violates federal law.

5.  Section 1201(a)(1) of the Copyright Act prohibits the circumvention of technological measures that control access to copyrighted material and punishes each act of circumvention with statutory damages of between $200 and $2,500 per act. Section 1201(a)(2) of

the Copyright Act prohibits the manufacture, offering to the public, or trafficking of services that are marketed for use in circumventing technological measures, and likewise carries statutory damages. SerpApi has violated these provisions on a massive scale.

6. Google seeks redress for SerpApi's statutory violations through this lawsuit. It alleges on personal knowledge as to its own actions and on information and belief as to the actions of others as follows:

**THE PARTIES AND NATURE OF THE ACTION**

7. Google is a Delaware limited liability company and a wholly-owned subsidiary of Alphabet, Inc., with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California. Google owns and operates multiple services, including Google Search, a search engine service, accessible, among other places, on the World Wide Web at www.google.com. Google has invested billions of dollars to develop, operate and improve Google Search, endeavoring to provide users with information that Google believes will be most relevant to their search queries.

8. Defendant SerpApi is an entity incorporated in Texas with its principal place of business in Austin, Texas. SerpApi operates an online "Application Programming Interface" ("API") service available at serpapi.com. SerpApi offers its customers paid subscriptions to a "Google Search API," a software service that it advertises as a way to "Scrape Google." Through this service, SerpApi automatically circumvents Google's technological protection measures to access and appropriate Google's Search results, including the substantial copyrighted content that Google licenses from others. SerpApi then offers that content to its customers for a fee.

**JURISDICTION AND VENUE**

9. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. §§ 1201, *et seq*.

10. The Court has personal jurisdiction over SerpApi because SerpApi specifically targeted its unlawful conduct at Google in California, circumventing Google's technological protection measures and accessing and scraping Google's Search results in this state, with knowledge that its actions harm Google in California. SerpApi has an employee in California who

actively promotes its illicit behavior from California. It also advertises California corporations as customers and commits unlawful acts on their behalf, and offers a "Supported Locations API" that includes over 900 locations in California through which customers can access SerpApi's services. Google's claims arise directly from SerpApi's contacts with California.

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400 because a substantial part of the events giving rise to the claims occurred in this judicial district and because SerpApi may be found here. At all relevant times, SerpApi directed its wrongful acts at Google, which has its principal place of business within this judicial district. SerpApi transacts business in this judicial district, including by offering and selling its Google-specific circumvention services to residents of this district.

**DIVISIONAL ASSIGNMENT**

12. Because this is an intellectual property case, it may be assigned to any division under Civil Local Rule 3-2(c) and N.D. Cal. General Order No. 44.

**BACKGROUND**

**Google's Search Results**

13. Google's longstanding corporate mission is to "organize the world's information and make it universally accessible and useful." As a step in fulfilling that mission, Google operates Google Search. In accordance with websites' instructions and permissions expressed through the industry-standard robots.txt protocol, Google Search locates websites or other information on the Internet that it believes users would find relevant to given queries, organizes that information, and presents a list of such sites and information as "Search results."

14. Google prepares its Search results using a number of complex algorithms that identify and rank results based on Google's views as to what information the user may find most relevant. Google is constantly innovating with respect to the process by which it identifies information of potential relevance. Google has invested decades of work and billions of dollars to develop and operate Google Search, and the service processes billions of user queries a day.

15. One example of such innovation is Google's Knowledge Graph, a database containing a compilation of information from a variety of licensed and open sources. Google's

Search results often show information that comes from its Knowledge Graph presented within "Knowledge Panels" alongside links to websites and other information of potential interest to users. Knowledge Panels offer a snapshot of timely information that Google believes is responsive to users' queries.

16. Google licenses copyrighted content to include in its Knowledge Graph and display in Knowledge Panels, including high resolution images. For example, in response to a user's query for "Willie Mays," Google may display search results including a Knowledge Panel like this:



Google obtained the image of Mays on the top left under a copyright license.

17. Other search-related services featuring copyrighted content include Google Shopping, where merchants supply product images and descriptions, and Google Maps, where Google displays a variety of terrestrial pictures, business-supplied imagery and user-generated reviews.

### SerpApi's Operations

18. SerpApi was founded in 2017 after founder Julien Khaleghy concluded that "scraping images from Google was an intensive process."

19. SerpApi's business model is parasitic. At tremendous scale, it appropriates the output of other services that have made substantial investments to generate it, and delivers the content to third parties for a fee. To do so, SerpApi uses automated means to scrape these other services – generating billions of artificial requests and then copying and selling the responses. SerpApi does not compensate the services it scrapes for the output or for the costs of responding to the massive burdens their automated processes impose on the services' computer infrastructures. Its scraping invariably violates the services' governing agreements and flouts access restrictions that those services convey to automated crawlers or "bots" through robots.txt instructions.

20. SerpApi likewise does not get permission from or compensate the copyright holders whose content it grabs and redistributes. It pays them no license fees, shares no advertising or subscription revenue and does not drive visitors to their websites. It simply takes their content and sells it for its own benefit.

21. Google's high quality, content-rich Search results make it a favorite target for SerpApi's scraping operation and its customers. On its website, SerpApi highlights paid subscriptions to a "Google Search API," an automated software tool that SerpApi advertises as a way to access and "Scrape Google." Google estimates that SerpApi sends hundreds of millions of artificial search requests each day to Google. Over the last two years, that volume has increased by as much as 25,000%.

22. SerpApi also offers and advertises services specifically targeting the copyrighted content that Google includes in its Search results with specialized services to scrape Google's Knowledge Panels. As it explains in its marketing materials, "for some requests, Google Search includes a 'Knowledge Graph' block, typically on the right side. SerpApi is able to extract and make sense of this information." SerpApi similarly offers and advertises focused scraping services for Google Shopping, Google Maps, and more.

23. SerpApi knows full well that Google does not want its Search results to be scraped, but it does not care. In fact, it goes to great lengths to hide its activities. According to SerpApi's blog, its services include default features to "avoid being detected and blocked by Google," including the "latest technologies to mimic human behavior."

24. For Google, SerpApi's automated scraping not only consumes substantial computing resources without payment, but also disrupts Google's content partnerships. Google licenses content so that it can enhance the Search results it provides to users and thereby boost its competitive standing. SerpApi undermines Google's substantial investment in those licenses, making the content available to other services that need not incur similar costs.

25. SerpApi's scraping of Google Search results also impacts the rights holders who license content to Google. Without permission or compensation, SerpApi takes their content from Google and widely distributes it for use by third parties. That, in turn, threatens to disrupt Google's relationship with the rights holders who look to Google to prevent the misappropriation of the content Google displays. At least one Google content partner, Reddit, has already sued SerpApi for its misconduct.

## Google's SearchGuard

26. Google bears both fixed and marginal costs to process queries that are sent to Google Search. It hopes to offset those costs and generate revenue from such queries, but does not do so when the queries are automated. Instead, those queries impose a deadweight loss on Google. Accordingly, Google prohibits automated access to and scraping of its Search results in its Terms of Service Agreement with users. The agreement expressly forbids the use of "automated means to access content from any of [its] services in violation of the machine-readable instructions on our web pages (for example, robots.txt files that disallow crawling, training, or other activities)." Google's robots.txt instructions also make clear to automated crawlers, like SerpApi's, that Google's Search results are not to be crawled.

27. To backstop its contractual prohibition and robots.txt instructions, to further protect its investments in copyrighted content, to help safeguard the rights of the rights holders that supply it, and to help preserve its relationships with those rights holders, Google developed, at

considerable expense, a technological protection measure called SearchGuard. SearchGuard is the product of tens of thousands of person hours and millions of dollars of investment. Its purpose is to prevent unauthorized third parties from automatically accessing Google's Search results and appropriating the content in them *en masse*, but to do so without degrading the Google Search experience for ordinary users.

28. SearchGuard effectively controls access to copyrighted works because, in the ordinary course of its operation, it requires the application of information to gain access to Google Search results and the copyrighted content they contain.

29. SearchGuard works in part by sending a JavaScript "challenge" to search queries Google receives from unrecognized sources to validate that the query to Google comes from a real user as opposed to automated software. Google's computer system transmits JavaScript code that calls upon the user's browser to send Google a "solve" for the challenge, that is, to send Google specific information regarding the browser and user generating the request. For human users, the solve is relatively straightforward; their browsers run the JavaScript code and send back the required information seamlessly, without disrupting the user experience. But automated systems, like SerpApi's, that submit automated queries at a massive scale typically cannot solve the SearchGuard challenge. As a result, SearchGuard denies them access to Google's Search results and the copyrighted works within them.

### SerpApi's Circumvention of SearchGuard

30. When SearchGuard launched in January 2025, it effectively blocked SerpApi from accessing Google's Search results and the copyrighted content of Google's partners. But SerpApi immediately began working on a means to circumvent Google's technological protection measure. SerpApi quickly discovered means to do so and deployed them.

31. SerpApi's answer to SearchGuard is to mask the hundreds of millions of automated queries it is sending to Google *each day* to make them appear as if they are coming from human users. SerpApi's founder recently described the process as "creating fake browsers using a multitude of IP addresses that Google sees as normal users."

32.     SerpApi's fakery takes many forms. For example, when SerpApi submits an automated query to Google and SearchGuard responds with a challenge, SerpApi may misrepresent the device, software, or location from which the query is sent in order to solve the challenge and obtain authorization to submit queries. Additionally or alternatively, SerpApi may solve SearchGuard's challenge with a "legitimate" request and then syndicate the resulting authorization, that is, share it with unauthorized machines around the world, to enable their "fake browsers" to generate automated queries that appear to Google as authorized. It also uses automated means to bypass CAPTCHAs, another aspect of SearchGuard that tests users to ensure they are humans rather than machines.

33.     SerpApi routinely boasts of its circumvention of SearchGuard. In a recent blog post, for example, it explained that SearchGuard had made SerpApi's "web scraping more difficult," but claimed it was "fortunate to be minimally impacted" because its services had "already pre-solved Google's JavaScript challenge." SerpApi also bragged that when "Google later increased the difficulty" of SearchGuard challenges, it "briefly interrupted our ability to perform web searches. However, thanks to the dedicated efforts of our engineers we were quickly able to resolve the problem." And SerpApi promised that if Google implements new technological protection measures, SerpApi intends to bypass those as well: "It's hard to say what Google might do going forward[.] However, at SerpApi we're confident in our ability to handle any new variations to these changes Google might introduce."

34.     SerpApi's circumvention of technological protection measures in general, and Google's in particular, is the principal service it sells. It boldly promises that potential customers "don't need to care about … captcha, IP address, bots detection, maintaining user-agent, HTML headers, [or] being blocked by Google." That, according to SerpApi, is because it uses "advanced algorithms to bypass CAPTCHAs and other anti-bot mechanisms, ensuring uninterrupted and efficient data extraction."

**FIRST CAUSE OF ACTION**

**(VIOLATION OF THE DMCA, 17 U.S.C. § 1201(A)(1)(A))**

35.     Google incorporates by reference each and all of the allegations in the foregoing

paragraphs, as if fully set forth herein.

36. Google's Search results pages contain countless copyrighted works that third party rights holders have licensed to Google to include in Google Search results.

37. Google's SearchGuard is a technological measure that effectively controls access to the copyrighted works that are licensed to appear in Google's Search results within the meaning of 17 U.S.C. § 1201. In the ordinary course of its operation, SearchGuard requires the authorized application of information to gain access to the works.

38. Without authorization from the relevant right holders, SerpApi has, on billions of separate occasions, circumvented SearchGuard in order to gain access to Google Search results and the copyrighted content they contain.

39. Each time SerpApi has circumvented SearchGuard, it has violated Section 1201(a)(1) of the Digital Millennium Copyright Act.

40. SerpApi's statutory violations have caused and will continue to cause harm to Google: (i) through the direct imposition of costs to respond to SerpApi's billions of automated queries; (ii) by undermining Google's investment in the copyrighted content it has licensed; (iii) by threatening to disrupt Google's relationship with content licensors; and (iv) by forcing Google to incur substantial costs to develop and enhance technological measures to protect against SerpApi's unauthorized scraping of licensed copyrighted content.

41. SerpApi has received and will continue to receive significant financial benefits from its acts of circumvention by selling the Google Search results that it is only able to access by virtue of its circumventions.

42. Google is entitled to recover from SerpApi the actual damages Google has suffered because of SerpApi's statutory violations as well as any additional, non-duplicative profits SerpApi has earned from them. Google may alternatively elect to recover statutory damages of no less than $200 and as much as $2,500 for each of SerpApi's many statutory violations.

43. SerpApi's circumvention is ongoing and is causing Google irreparable harm because SerpApi will not be able to pay the damages it will owe for its misconduct. Given the massive statutory liability SerpApi has incurred and will continue to incur in the future – a figure

that increases with hundreds of millions of additional violations *every day* – Google's harm will not be remedied by a statutory damages award because SerpApi will be unable to pay it. SerpApi reportedly earns a few million dollars in annual revenue, but already faces liability that is orders of magnitude higher and growing.

44. Google thus will continue to suffer harm for which it has no adequate remedy at law unless SerpApi's statutory violations are enjoined by the Court.

WHEREFORE, Google prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

### (VIOLATION OF THE DMCA, 17 U.S.C. § 1201(A)(2))

45. Google incorporates by reference each and all of the allegations in the foregoing paragraphs, as if fully set forth herein.

46. SerpApi manufactures, offers to the public, provides, or otherwise traffics in services and technology that function to circumvent SearchGuard, a Google technological measure that effectively controls access to copyrighted works.

47. SerpApi's services and technology have, at most, a limited commercially significant purpose beyond the circumvention of SearchGuard, and SerpApi has marketed its services and technology with knowledge that they are and will be used to circumvent SearchGuard. SerpApi's blog post, for example, brags extensively about the company's circumvention of SearchGuard, and its plans to continue circumventing Google's technological measures.

48. By manufacturing, offering to the public, providing, and otherwise trafficking in its circumvention services and technology, and marketing them with knowledge that they will be used to circumvent SearchGuard, SerpApi violates Section 1201(a)(2) of the Digital Millennium Copyright Act.

49. SerpApi's statutory violations have caused and will continue to cause harm to Google: (i) through the direct imposition of costs to respond to SerpApi's billions of automated queries; (ii) by undermining Google's investment in the copyrighted content it has licensed; (iii) by threatening to disrupt Google's relationship with content licensors; and (iv) by forcing Google

to incur substantial costs to develop and enhance technological measures to protect against SerpApi's unauthorized scraping of licensed copyrighted content.

50. SerpApi has received and will continue to receive significant financial benefits from providing and marketing its services and tools for the purpose of circumvention.

51. Google is entitled to recover from SerpApi the actual damages Google has suffered because of SerpApi's violations of 1201(a)(2) as well as any additional, non-duplicative profits SerpApi has earned from them. Google may alternatively elect to recover statutory damages of no less than $200 and as much as $2,500 for each of SerpApi's many statutory violations.

52. SerpApi's statutory violations are ongoing and are causing Google irreparable harm because SerpApi will not be able to pay the damages it will owe for its misconduct. Given the massive statutory liability SerpApi has incurred and will continue to incur in the future, Google's harm will not be remedied by a statutory damages award because SerpApi will be unable to pay it. SerpApi reportedly earns a few million dollars in annual revenue, but already faces liability that is orders of magnitude higher and growing.

53. Google thus will continue to suffer harm for which it has no adequate remedy at law unless SerpApi's statutory violations are enjoined by the Court.

WHEREFORE, Google prays for judgment as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Google prays for an order and judgment against SerpApi as follows:

a. Enjoining SerpApi, its officers, agents, servants, employees, attorneys, affiliated companies, assigns and successors in interest, and those persons in active concert or participation with them from violating 17 U.S.C. § 1201 *et seq.*, by circumventing Google's technological measures and/or by designing, manufacturing, marketing, selling, offering to the public, or otherwise trafficking in any technology, product, service, or device that is designed or marketed to circumvent Google's technological measures;

b. Compelling the destruction by SerpApi of any technology, device or product involved in its violations of Section 1201;

      c.      Awarding Google statutory damages for each of SerpApi's violations of Section 1201, or alternatively, at Google's selection, Google's actual damages and SerpApi's profits from such violations;

      d.      Awarding Google its costs and attorneys' fees pursuant to 17 U.S.C. § 1203;

      e.      Prejudgment and post-judgment interest;

      f.      Such other and further relief as the Court may deem proper.

## JURY DEMAND

Google hereby demands a jury trial of all issues triable by a jury.

Dated: December 19, 2025

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ David H. Kramer*
David H. Kramer
E-mail: dkramer@wsgr.com

Attorneys for Plaintiff
GOOGLE LLC