UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GOOGLE LLC, | ) Case No.: 4:25-cv-10826-YGR |
| Plaintiff, | ) **[PROPOSED] ORDER DENYING** |
| v. | ) **DEFENDANT'S MOTION TO** <br> ) **DISMISS** |
| SERPAPI, LLC, | ) Date:  May 19, 2026 |
| Defendant. | ) Time:  2:00 P.M. <br> ) Courtroom:  1, 4th Floor |
| | ) Before: Hon. Yvonne Gonzalez Rogers |

[PROPOSED] ORDER                                           CASE NO.:  4:25-CV-10826-YGR

Upon consideration of Defendant SerpApi, LLC's ("SerpApi") Motion to Dismiss (the "Motion"), the pleadings and papers filed in support of and in response to the Motion, and argument of counsel, for good cause shown,

**IT IS HEREBY ORDERED:**

1.      SerpApi's Motion is DENIED.

**BACKGROUND**

2.      Section 1201(a)(1)(A) of the Digital Millennium Copyright Act ("DMCA") provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."  17 U.S.C. § 1201(a)(1)(A).  To "circumvent a technological measure" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  17 U.S.C. § 1201(a)(3)(A).  A technological measure "effectively controls access to a work" if it, "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."  17 U.S.C. § 1201(a)(3)(B).

3.      Section 1201(a)(2) prohibits trafficking in circumvention technology: no person shall "manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof" that is primarily designed for circumvention, has limited commercially significant non-circumvention purpose, or is marketed for circumvention use.  17 U.S.C. § 1201(a)(2).

4.      Any person "injured by a violation of section 1201" may bring a civil action for damages.  17 U.S.C. § 1203(a).

5.      Google owns and operates Google Search, a search engine that locates websites or other information on the Internet that it believes users would find relevant to queries.  ECF 1 ("Compl.") ¶ 13.  Google organizes that information and presents a list of such sites as search results. *Id.*  Google licenses copyrighted content to include in various aspects of its Search results.  *Id.* ¶¶ 16-17.  One example is Google's Knowledge Graph, a database containing a compilation of information from a variety of licensed and open sources.  *Id.* ¶ 15.  Search results often show

information that comes from its Knowledge Graph presented within "Knowledge Panels" alongside links to websites and other information of potential interest to users. *Id.* These Knowledge Panels include licensed copyrighted content, including high resolution images. *E.g.*, *id.* ¶¶ 15-16. Other search-related services featuring copyrighted content include Google Shopping, where merchants supply product images and descriptions, and Google Maps, where Google displays a variety of terrestrial pictures, business-supplied imagery and user-generated reviews. *Id.* ¶ 17.

6.    SerpApi offers its customers paid subscriptions to a "Google Search API," a software service that it advertises as a way to "Scrape Google." Compl. ¶¶ 8, 21. In an effort to stop SerpApi's scraping, Google developed a suite of technology it calls "SearchGuard" that requires a web browser to apply information—a JavaScript "solve"—to prove that a query comes from a real human user before being able to access Google Search results. *Id.* ¶¶ 27-29. Undeterred, SerpApi developed means of disguising its automated queries so that it could continue to access Google Search results notwithstanding SearchGuard. *Id.* ¶¶ 31-32.

7.    Google sued SerpApi, alleging that each time it circumvents SearchGuard, it violates the anti-circumvention prohibition in Section 1201(a)(1), and that by manufacturing, offering to the public, providing, and otherwise trafficking in its circumvention services and technology, and marketing them with knowledge that they will be used to circumvent SearchGuard, SerpApi violates the anti-trafficking prohibition in Section 1201(a)(2). SerpApi moved to dismiss.

### LEGAL STANDARD

8.    "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### ANALYSIS

9.    Google has standing to bring its circumvention and trafficking claims under the DMCA because it is a "person injured by a violation of section 1201." 17 U.S.C. § 1203(a); *see*

*also Viral DRM LLC v. Seven W. Media Ltd.*, 768 F. Supp. 3d 1025, 1031 (N.D. Cal. 2025) ("[U]nder the express language of the statute '[a]ny person' that is injured by the conduct may bring an action for [a Section 1201] violation."). In its Complaint, Google alleges injuries that are cognizable under the DMCA, namely, that SerpApi's conduct has undermined Google's investment in licensed copyrighted content, disrupted Google's relationship with the rightsholders who license copyrighted content to Google, and forced Google to incur costs to develop and enhance its technological measures to protect against unauthorized scraping. Compl. ¶¶ 24-25.

10.     Google has plausibly alleged that SerpApi circumvented a technological measure in violation of 17 U.S.C. § 1201(a)(1)(A).

11.     SearchGuard effectively controls access to copyrighted works because it requires the application of information—a "solve" obtained after a JavaScript "challenge"—to gain access to the copyrighted works on Google's Search results pages. Compl. ¶¶ 29, 37. To effectively control access, an access control measure need only "provide some degree of control over access to a copyrighted work." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 954 n.17. SearchGuard satisfies that standard. Contrary to SerpApi's argument, a technological measure does not need the authority of the copyright owner to effectively control access to a work. The plain text of Section 1201(a) does not require a copyright owner to authorize use of a technological measure. Rather, Sections 1201(a)(3)(A) and 1201(a)(3)(B) refer to the authority of the copyright owner to *circumvent* a technological measure or otherwise access a work, not implement a technological measure in the first place. 17 U.S.C. §§ 1201(a)(3)(A), (B). In any event, Google plausibly alleges that it has the authority of the copyright owner to implement its technological measure because it licenses the display rights of the copyrighted works that appear on Search results pages. Compl. ¶¶ 2, 15-17, 36; *see Echostar Satellite L.L.C. v. Viewtech, Inc.*, 543 F. Supp. 2d 1201, 1206 (S.D. Cal. 2006) (Where a plaintiff "contracts and purchases" copyright rights from the owner, it is "reasonable to infer" that the plaintiff "also has the authority to control the measures protecting" the content).

12.     SerpiApi circumvents SearchGuard because it avoids and bypasses Google's technological measures, which are intended to authorize queries only from real human users while prohibiting automated ones. Compl. ¶¶ 30-34, 38. Indeed, SerpApi's own marketing materials tout

its ability to "bypass" Google's anti-bot mechanisms. *Id.* ¶¶ 32-34. Further, SerpApi invokes cases interpreting the Computer Fraud and Abuse Act, including *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1194 (9th Cir. 2022). But these cases, including *hiQ*, involved a different statute that protects different interests and that does not use the words circumvention, bypass, or avoid. *See hiQ*, 31 F.4th at 1194 (interpreting 18 U.S.C. § 1030).

13. Google has plausibly alleged that SerpApi trafficked in circumvention technology and services under 17 U.S.C. § 1201(a)(2).

14. SerpApi commits trafficking under Section 1201(a)(2)(A) and (B) because its circumvention technology and service is "primarily designed or produced" for the purpose of circumventing Google's SearchGuard and has "limited commercially significant purpose or use" other than circumventing SearchGuard. The service exists to access Google's Search results, including copyrighted content, by automated means. *E.g.*, Compl. ¶ 8. Those Search results, including copyrighted content, are protected by SearchGuard. *Id.* ¶¶ 26-29. Circumvention is SerpApi's "principal service" and, indeed, SerpApi cannot fulfill a single customer query without circumventing SearchGuard. *See id.* ¶¶ 31-34. Taken together, these allegations indicate that SerpApi's technology and services were offered primarily to circumvent Google's technological measures.

15. SerpApi commits trafficking under Section 1201(a)(2)(C) because it "market[s]" its services for use in circumventing SearchGuard. SerpApi promises customers that they "don't need to care about … captcha, IP address, bots detection, maintaining user-agent, HTML headers, [or] being blocked by Google," because SerpApi uses "advanced algorithms to bypass CAPTCHAs and other anti-bot mechanisms, ensuring uninterrupted and efficient data extraction." Compl. ¶ 34. It publicly blogged about defeating SearchGuard and its ability to circumvent any future protections Google may deploy. *Id.* ¶¶ 31, 33. Even in moving to dismiss, SerpApi concedes that it "advertises its technological prowess" in scraping content from Google's services. ECF No. 22 at 22.

IT IS SO ORDERED.

Dated: _____          _____

Hon. Yvonne Gonzalez Rogers
United States District Court Judge