Joseph E. Clark (SBN 281021)
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000
jclark@proskauer.com

*Attorney for Defendant SerpApi, LLC*

Additional Counsel listed on Signature Page

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

GOOGLE LLC,

        Plaintiff,

             v.

SERPAPI, LLC,

        Defendant.

Case No. 25-cv-10826-YGR
Hon. Yvonne Gonzales Rogers

Time: April 28, 2026, 2:00 p.m.
Court: Courtroom 1 – 4th Floor

## SERPAPI'S REPLY TO ITS MOTION TO STAY DISCOVERY

**TABLE OF CONTENTS**

I.      INTRODUCTION. ........................................................................................................ 1

II.     SERPAPI'S MOTION TO DISMISS IS "POTENTIALLY DISPOSITIVE." .................. 2

        A.      Google Misstates the Governing Standard. ...............................................................2

        B.      SerpApi Presented Substantial and Serious Grounds for Dismissal........................4

        C.      Google Offers No Amendment to Cure Its Pleading Deficiencies. .......................10

III.    DISCOVERY IS NOT NEEDED TO RESOLVE THE MOTION TO DISMISS........... 10

IV.     PRE-MOTION DISCOVERY NEEDLESSLY IMPOSES SIGNIFICANT
        BURDEN AND THREATENS COMMERCIAL HARM. ............................................. 11

V.      CONCLUSION............................................................................................................. 14

**TABLE OF AUTHORITIES[1]**

**Page(s)**

CASES

*321 Studios v. MGM Studios, Inc.*,
  307 F. Supp. 2d 1085 (N.D. Cal. 2004) ........................................................................8

*Associated Gen. Contractors of Cal., Inc. v. California State Council of
  Carpenters*,
  459 U.S. 519 (1983)........................................................................................................7

*Cellwitch, Inc. v. Tile, Inc.*,
  2019 WL 5394848 (N.D. Cal. 2019) ..............................................................................2

*Craigslist, Inc. v. Doe 1*,
  2011 WL 1897423 (N.D. Cal. 2011) ..............................................................................9

*Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
  965 F.3d 365 (5th Cir. 2020) ..........................................................................................8

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) ..........................................................................................9

*EchoStar Satellite, L.L.C. v. Viewtech, Inc.*,
  543 F. Supp. 2d 1201 (S.D. Cal. 2008)...........................................................................6

*Est. of Bock v. Cnty. of Sutter*,
  2012 WL 94618 (E.D. Cal. 2012)....................................................................................2

*Garcia v. TDBBS, LLC*,
  2025 WL 1755648 (N.D. Cal. 2025) ..........................................................................5, 10

*Gray v. First Winthrop Corp.*,
  133 F.R.D. 39 (N.D. Cal. 1990).......................................................................................3

*Heck v. Amazon.com, Inc.*,
  2022 WL 16579372 (N.D. Cal. 2022) ........................................................................5, 10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ......................................................................................8, 9

*In re Google Digital Advert. Antitrust Litig.*,
  2020 WL 7227159 (N.D. Cal. 2020) ...........................................................................3, 11

---

[1] Unless otherwise specified, all emphasis added, capitalizations conformed without brackets, and internal citations and quotation marks omitted.

*In re Nexus 6p Prods. Liab. Litig.*,
    2017 WL 3581188 (N.D. Cal. 2017) ................................................................................3

*Kincheloe v. American Airlines, Inc.*,
    2021 WL 5847884 (N.D. Cal. 2021) ............................................................................5, 11

*Leonard v. CVS Pharmacy, Inc.*,
    2025 WL 1266929 (N.D. Cal. 2025) .........................................................................2, 3, 4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2004) .......................................................................................8

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) .......................................................................................8

*Meta Platforms, Inc. v. Voyager Labs, Ltd.*,
    2023 WL 4828007 (N.D. Cal. 2023) ............................................................................4

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
    2018 WL 1569811 (N.D. Cal. 2018) .......................................................................4, 13

*Pearl Invs., LLC v. Standard I/O, Inc.*,
    257 F. Supp. 2d 326 (D. Me. 2003) .............................................................................8

*Pereda v. Gen. Motors LLC*,
    2022 WL 19692037 (N.D. Cal. 2022) ........................................................................11

*Power Integrations, Inc. v. Park*,
    2016 WL 10859441 (N.D. Cal. 2019) ..........................................................................4

*Rae v. Union Bank*,
    725 F.2d 478 (9th Cir. 1984) ......................................................................................11

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    2020 WL 2843369 (N.D. Cal. 2020) ..........................................................................14

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ................................................................................11, 14

*Sheldon v. Plot Com.*,
    2016 WL 5107072 (E.D.N.Y. 2016).............................................................................10

*Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*,
    2019 WL 9667685 (E.D. Cal. 2019).........................................................................3, 5

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) ........................................................................9

*Viral DRM LLC v. Seven W. Media Ltd.*,
    768 F. Supp. 3d 1025 (N.D. Cal. 2025) .......................................................................6

*Wood v. McEwen*,
    644 F.2d 797 (9th Cir. 1981) ...............................................................................................4

**STATUTES**

17 U.S.C. § 512 (Digital Millennium Copyright Act, "DMCA")........................................... *passim*

17 U.S.C. § 1201...................................................................................................................6, 9

**RULES**

Fed. R. Civ. P. 12...............................................................................................................4, 11

Fed. R. Civ. P. 26....................................................................................................................2

**OTHER AUTHORITIES**

House Judiciary Comm. Rep., H.R. Rep. No. 105-551, pt. 1 ............................................................9

## I.    INTRODUCTION.

SerpApi's Motion to Dismiss presents a fundamental question:  whether website operators can invoke the DMCA to preserve their information monopolies over *publicly-available* information they do not own.  After taking a preliminary peek at that motion, this Court recognized that it raises substantial and serious questions and, without taking any view "as to the merits of the motion to dismiss," properly exercised its discretion to vacate the Case Management Conference. *See* ECF 28.  The Court explained that scheduling discovery would be "premature" "until the Court has resolved the motion." *Id*.  In opposing this Stay Motion, Google seeks to reverse that decision. The Court should decline the invitation.

Google does not dispute the two factors that matter for this motion:  (1) SerpApi's Motion to Dismiss, if granted, would dispose of the entire case; and (2) the motion raises threshold legal questions that require no discovery.  Instead, Google seeks to rewrite the governing standard, arguing that a temporary stay is warranted *only* if the Court is already convinced the Complaint fails.  That is not the law.  The Court need not decide the Motion to Dismiss to stay discovery pending its resolution.  It only needs to determine whether it presents substantial, potentially dispositive issues that can be resolved without discovery.  SerpApi's motion satisfies that standard.

A discovery stay is particularly warranted because Google faces no meaningful prejudice from a short stay, while immediate discovery would impose significant and unnecessary burdens on both parties.  Google's claim of urgency is belied by its own litigation choices:  it seeks no preliminary relief.  Nor does it identify any *actual* damage it suffered.  Instead, it points to its *ordinary course* "investment" in its platform – expenditures that are invariant to the conduct at issue – and then invokes astronomical statutory damages under the DMCA to drive SerpApi out of business.  But that is a reason to proceed with deliberation and care, after this Court resolves whether the DMCA can be used to achieve that result.

Immediate discovery would cause significant prejudice to SerpApi, as the discovery burdens will be neither typical nor modest.  Google's recently issued requests already cover traffic and activity logs that are so voluminous they cannot be described in gigabytes or even terabytes. And Google's requests would capture some of SerpApi's most sensitive information, including its

source code, which Google claims it has spent years ineffectually trying to incapacitate. The mere disclosure of this information could threaten SerpApi's business before the viability of Google's claims has been tested.

Under such circumstances, the more appropriate course is to follow the path this Court has already set, which is to schedule a Case Management Conference after resolving the Motion to Dismiss and to stay discovery until then.

## II.    SERPAPI'S MOTION TO DISMISS IS "POTENTIALLY DISPOSITIVE."

### A.    Google Misstates the Governing Standard.

Google concedes a stay is warranted where a "pending motion [is] potentially dispositive of the entire case." G.Br. 2. SerpApi's Motion to Dismiss qualifies. It raises seven *independent* grounds for dismissal. Six would dispose of the entire case, and the seventh would eliminate one of Google's two claims. Moreover, even if the entire case were not dismissed, the motion could significantly narrow the case. That too is an appropriate basis for staying discovery. *See Est. of Bock v. Cnty. of Sutter*, 2012 WL 94618, *2 (E.D. Cal. 2012).

Google does not dispute that, if any one of the six fully-dispositive grounds were granted, the *entire* case would be over. Instead, it argues that "courts do not ask whether the motion to dismiss would be dispositive *if granted*" because doing so would justify a stay "in virtually every case." G.Br. 2. But courts certainly *do* consider the effect of the motion if granted. *See Cellwitch, Inc. v. Tile, Inc.*, 2019 WL 5394848, *2 (N.D. Cal. 2019) (finding motion "has the potential to be dispositive" because "***if granted***, … every claim … would be subject to dismissal."); *Leonard v. CVS Pharmacy, Inc.*, 2025 WL 1266929, *2 (N.D. Cal. 2025) (granting stay because "if the court grants Defendants' motion …, it will dispose of all claims."). Indeed, assessing the effect of the motion if granted is the primary purpose of the preliminary peek.

Google's hyperbole is also unwarranted. Defendants frequently file motions to dismiss merely to *shape* the case—for example, by seeking to dismiss some claims or some parties but not all. In such cases, granting the motion might narrow the case, but it would not dispose of it. In contrast, SerpApi's motion is a full-throttled challenge to Google's use of the DMCA to prohibit

*otherwise lawful* scraping of *public* information. That is a serious and substantial legal question that would dispose of the entire case.

Recognizing this, Google shifts focus from the word "entire" to the word "*potentially*," arguing that a stay is "potentially" dispositive only if the Court is "*convinced*" that Google's claim is "*utterly frivolous*" and that it "will be unable to state a claim." G.Br. 2. But the word "potentially" cannot carry that weight. It does not demand certainty of success. Nor does it require the Court to pre-judge its merits. As Google itself argues when it seeks to stay discovery, "the Court need not determine whether it would ultimately grant the motion to dismiss."[2]

The relevant question is simply whether the motion to dismiss raises serious and substantial questions of law that could "potentially" resolve the case. *See Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, 2019 WL 9667685, *1-3 (E.D. Cal. 2019) (granting stay where the motion raised issues "**sufficiently meritorious** for a finding that the motions are potentially dispositive of the case"); *In re Google Digital Advert. Antitrust Litig.*, 2020 WL 7227159, *2 (N.D. Cal. 2020) (staying discovery where Google's motion to dismiss "presents formidable arguments"); *In re Nexus 6p*, 2017 WL 3581188, at *2 (granting Google a stay where, even absent any "'silver bullet' defense," its motion presented issues that "could prove difficult for Plaintiffs to overcome.").

In its effort to impose an impossible burden, Google relies primarily on *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). That 36-year-old case predates *Twombly*, and its invocation of the "utterly frivolous" phrase reflected the now-overruled "no set of facts" pleading regime. When federal pleading standards were interpreted to permit virtually every case to proceed to discovery, it is no wonder that courts routinely declined to stay discovery. But since the Supreme Court directed courts to engage in a more meaningful review at the pleading stage, the calculus has changed. *See Leonard*, 2025 WL 1266929, at *1 n.1 ("Plaintiff contends that the Court must also be convinced that the plaintiff will be unable to state a claim…. This is a

---

[2] *See* Google Mot. to Stay, *In re Google Digital Advert. Antitrust Litig.*, 20-cv-03556, ECF 42 at 2 (N.D. Cal. 2020) (quoting *In re Nexus 6p Prods. Liab. Litig.*, 2017 WL 3581188, *2 (N.D. Cal. 2017)) (citing *Cellwitch*, 2019 WL 5394848, at *2).

misunderstanding of the standard [based on a case that] was decided over a decade prior.").[3]  As Google recognizes, the "very purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints ***without subjecting themselves to discovery.***"  *See* Google Reply Br., *Arcell v. Google LLC*, 22-cv-02499, ECF 36 at 13 (N.D. Cal. 2022) (citing *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)).[4]

Nor do Google's other cases help it.  In *Power Integrations, Inc. v. Park*, 2016 WL 10859441 (N.D. Cal. 2019), the motion to dismiss, even if granted, would not "be dispositive of the *entire* case."  *Id*., at \*2.  In *Meta Platforms, Inc. v. Voyager Labs, Ltd.*, 2023 WL 4828007 (N.D. Cal. 2023), the defendant only raised technical defects that were "more suited to cure by amendment … than outright dismissal."  *Id*., at \*2.  And in *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 2018 WL 1569811 (N.D. Cal. 2018), discovery had been underway for nearly a *year* before defendants sought a stay in response to an amended complaint plaintiffs filed consistent with the court's earlier guidance.[5]  None of those situations are present here.  SerpApi's motion is potentially dispositive of the "entire" case because it challenges the heart of Google's DMCA theory rather than any minor pleading defects that the Court has previously identified.

### B.    SerpApi Presented Substantial and Serious Grounds for Dismissal.

Google asks this Court to undertake a "lengthy review" of its now-filed opposition to SerpApi's Motion to Dismiss in the hope that it will find the motion "meritless."  *See* G.Br. 4. That is not the purpose of conducting a "preliminary peek," nor is "ultimate success" the standard.

---

[3] In *Leonard*, the court also rejected the argument that it must first be "convinced" of the dismissal motion's merits.  That formulation, the court explained, was derived from the Ninth Circuit's affirmance of a stay where the lower court happened to be so convinced.  But that fact did not purport to *limit* a court's discretion to manage discovery to such situations.  *See Leonard*, 2025 WL 1266929, at \*1 n.1 (discussing *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981)).

[4] Moreover, in *Gray*, several defendants had not yet filed dismissal motions and only offered "conclusory" arguments.  Even so, the Court did not create an "utterly frivolous" *floor*; it simply noted that in such cases, stays would be appropriate.  *Gray*, 133 F.R.D. at 40.

[5] *See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 16-cv-6370 (N.D. Cal.), ECF 28 (Mar. 16, 2017 Joint CMS, not seeking stay); ECF 32 (Mar. 21, 2017 order setting discovery schedule); ECF 38 (Sept. 28, 2017 Order granting MTD); ECF 45 (Jan. 12, 2018 first motion to stay).

As Google itself argued when obtaining a stay of discovery in *In re Digital Advertising*, "at this 'preliminary peek' stage, the Court 'need not determine' whether it would ultimately grant the motion to dismiss." *See* Google Mot. to Stay, *In re Digital Advert.*, 20-cv-3556, ECF 42 at 2. Other courts in this district have said the same. *See also Garcia v. TDBBS, LLC*, 2025 WL 1755648, \*2 (N.D. Cal. 2025) ("inquiries into whether [the] Motion to Dismiss is ultimately successful and whether Plaintiff may be granted leave to amend **do not factor into**" the stay calculus); *Kincheloe v. American Airlines, Inc.*, 2021 WL 5847884, \*2 (N.D. Cal. 2021) ("The court emphasizes that [the inquiry involves] only a 'preliminary peek' at the merits.").

In any event, SerpApi's Motion to Dismiss easily satisfies whatever standard the Court may wish to employ.

***Google Lacks Statutory Standing.*** Google concedes it is not a copyright owner, just a non-exclusive licensee of a few images it sporadically displays alongside its search results. As SerpApi explained, that is not enough for DMCA standing. In response, Google says that any "owner of a technological measure," regardless of whether it possesses any copyright interest, can sue to protect information owned by nameless others. G.Br. 4. But Google does not dispute that *Lexmark **rejected*** a literalist reading of the "any person injured" language. Congress legislates against the backdrop of the common law, which, as the Court noted, limits standing to those within the statute's zone of interest. The DMCA was not enacted to protect cryptologists, let alone designers of anti-bot technologies. It protects copyright interests. Google cites nothing in the statutory text or legislative history to the contrary. Instead, it relies on *EchoStar Satellite, L.L.C. v. Viewtech, Inc.*, 543 F. Supp. 2d 1201, 1205-06 (S.D. Cal. 2008), which pre-dated *Lexmark* and rests on the same literalist interpretation *Lexmark* overruled; and on *Viral DRM LLC v. Seven W. Media Ltd.*, 768 F. Supp. 3d 1025 (N.D. Cal. 2025), which also did not discuss *Lexmark* and simply cited *EchoStar*'s now-overruled reading.

***Google Does Not Possess the "Authority of the Copyright Owner."*** The DMCA only reaches circumvention of a "technological measure [that] requires the *application* of … a process or treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. §

1201(a)(3)(B). Google does not dispute that it lacks the "authority of the copyright owner" to impose any technological measure for the content Google itself scraped from the public web. Nor does Google deny that, when it parroted the statutory language in its Complaint, it intentionally omitted the words "with the authority of the copyright owner." *See* Cmplt. ¶ 28. Even now, Google does not claim it can cure this deficiency. Nor could it plausibly do so, as Google is not in privity with any of those copyright owners. As SerpApi's motion explained, that defect is fatal.

In response, Google asks this Court to ignore the definition of a "technological measure" under Section 1201(a)(3)(**B**), and focus only on the definition of "circumvention" under Section 1201(a)(3)(**A**). The definition of circumvention, Google says, focuses on whether "the *defendant* [lacks] the consent of copyright holders to access the copyrighted material, not [that] the *plaintiff* had obtained [the] copyright holders' approval to impose [the measure] in the first place." G.Br. 5. Whether that is true or not is irrelevant, because Google cannot ignore the definition of a relevant "technological measure," which requires the "authority of the copyright owner" to impose the technological measure. Copyright-owner authority is twice relevant under the DMCA: to bring a technological measure within the scope of the Act; and to place authorized acts of circumvention outside the ambit of the Act. Google focuses solely on the latter, without disputing that the former authority is also absent.

Google concedes the significance of this defect by acknowledging that, if its statutory interpretation is wrong, the vast bulk of its claims, its damages, and discovery demands would be obviated. G.Br. 5. Instead, it says the case would still proceed in a trimmed-down fashion because a small fraction of its search results contain images Google licenses. *Id*. But it concedes that it did not allege copyright-owner authority for those images either. Instead, it asks the Court to find – *as a matter of law* – that every non-exclusive license carries with it "*implicit*" authority to deploy any technological measure the licensee wants. But it cites no authority conferring such implied rights, and doing so would read the words "with the authority of the copyright owner" out of the statute.

Recognizing this, Google next asks the court to "infer" that it pled what it intentionally did not, again misplacing reliance on *EchoStar*. There, the court agreed that the plaintiff must have the express authority of the copyright owner to impose control measures. But relying on *pre-Twombly* cases, it found this element satisfied, not because of any "implied" rights, but because it was "reasonable to infer" at the pleading stage that the contracts *expressly* conferred such rights. Nothing in *EchoStar* speaks of "implied" contractual rights. Nor are the facts comparable. *EchoStar* involved satellite distribution of *encrypted* movies to paying subscribers, not mere stock photos used to supplement publicly distributed search results. In such circumstances, copyright owners relied on infringement claims, not anti-bot technologies, to protect their rights. It is simply not plausible to assume Google's non-exclusive licenses speak to, let alone authorize, Google's anti-bot technologies. As the Supreme Court explained, "[i]t is not … proper to assume that the [plaintiff] can prove facts that it has not alleged." *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

***SearchGuard is Not an Effective Control Measure.*** SerpApi explained why, under the case law, SearchGuard is not an effective access control measure under the DMCA. In response, Google does not dispute that every single datum scraped from Google is available outside the Google platform without any access control measure. That is fatal.[6] As the Sixth and Ninth Circuits explain, "just as one would not say that a lock on the back of a house controls access to a house whose front door does not contain a lock …, it does not make sense to say that … the DMCA applies to otherwise readily-available copyrighted works."[7] *Lexmark Int'l, Inc. v. Static Control*

---

[6] Google misplaces reliance on *Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326, 350 (D. Me. 2003). There, the author kept a secret "backup" copy of software code for his own use. The court held that this one-off exception had little bearing on how the technology was supposed to work "in the ordinary course of its operations," as required by the statutory text. Google's reliance on *321 Studios v. MGM Studios, Inc.*, 307 F. Supp. 2d 1085, 1095 (N.D. Cal. 2004), is also inapposite. There, the copyrighted content was ***not*** publicly available, as here. Only the decryption technology was generally available. That is, the door to the content was ***always*** locked, but the lock wasn't very good.

[7] Google's "public library" analogy neither alters the scope of the DMCA nor applies here. Public libraries, after all, also lock their doors, and the Copyright Act's "first sale" doctrine limits the scope of protection over physical copies sold downstream. In contrast, the DMCA was concerned with the ease of making virtually unlimited copies of digital works. Whether *Blizzard* and *Lexmark*

*Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 952-53 (9th Cir. 2010) (same). Google may wish that were not the law of this Circuit, but it is, and it defeats Google's claims.[8]

Google also ignores *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1202 (9th Cir. 2022). There, the Ninth Circuit warned against legal rules that would confer monopolies on website operators over information they do not own. Those concerns led it to conclude that a scraper's alleged circumvention of a website operator's anti-bot technologies did not render its access to a public website "unauthorized." Google's only response is that *hiQ* arose under the CFAA, while it asserts DMCA claims. But both statutes speak in terms of "authorization"—and that term must be interpreted consistently. A court cannot logically find that anti-bot measures are *ineffective* to prevent unwanted access to computer systems yet effective to prevent such access to the *subset* of copyrighted material stored on those same systems.[9]

**SerpApi Does Not Circumvent SearchGuard.** Even if SearchGuard is an effective technological control measure, SerpApi does not circumvent it. The DMCA defines

---

require a "front door/back door" lock for every copy, physical and digital, or only for digital copies is a question for another day and another court. Here, it is undisputed that not all digital copies were protected.

[8] Google's treatment of *Blizzard* is disingenuous. It cites only the *irrelevant* portion of the decision finding that the DMCA applies to works that were **not** otherwise generally available, while ignoring the relevant portion of the decision that the DMCA does not reach works that **are** available off the platform without protection. G.Br. 8. This supports SerpApi's position that both the front door and the back door must be locked for the DMCA to apply. As to *Lexmark*, Google's Stay Opposition is silent. In its Motion to Dismiss Opposition, it asserts that the DMCA applies because it is **not** the copyright owner, and so cannot control what the copyright owner does off its platform. But it cites no case suggesting that this is a relevant distinction, and it is nonsensical. The statute's text focuses on what the copyright owner, as the person at the top of the chain, authorizes, not what someone downstream who happens to have a copy does. If the copyright owner saw fit to make their work publicly available and waive DMCA protection, the DMCA does not resurrect it when someone else obtains a copy and employs technological measures as if the work was theirs. *See Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 376-77 (5th Cir. 2020) (DMCA protection not available where data could be accessed through open source software).

[9] Google misplaces reliance on *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 863 (9th Cir. 2017). *Disney* did not address what constitutes an "effective" copyright control measure. There, both parties agreed that the DVD encryption used was an "effective measure."

"circumvention" to mean "to descramble …, decrypt …, or otherwise avoid, bypass, remove, deactivate, or impair."  17 U.S.C. § 1201.  Google does not dispute that SerpApi does not descramble, decrypt, remove, deactivate, or impair anything.

Instead, it hangs its hat on the words "bypass" or "avoid," asking that they be given a broad interpretation.  But as the Ninth Circuit explained, the "rule of lenity" requires the opposite—it requires the *narrowest* interpretation in which the statute would still make sense.  *hiQ*, 31 F.4th at 1200.  Google does not address the rule of lenity, presumably because it knows it kills its claim. In *hiQ*, the Ninth Circuit invoked this rule to find that a person does not engage in "unauthorized access" by using bots that a website operator's anti-bot systems are incapable of stopping.  Here, as in *hiQ*, Google complains about bots that mimic human browsers.  But such mimicry is not the "electronic equivalent of breaking into a locked room."  *See* House Judiciary Comm. Rep., H.R. Rep. No. 105-551, pt. 1, at 17 (1998).  And so, "with regard to websites made freely accessible on the Internet …, the concept of [access] without authorization is inapt."  *hiQ*, 31 F.4th at 1198.[10]

***Google Has Not Suffered a Cognizable DMCA Injury.***  Google does not claim any injury flowing from any interest it holds in copyrighted content.  It says only that it invested in its search business, and spent money developing its anti-bot systems. G.Br. 7.  But those are not the interests Congress was concerned with when it enacted the DMCA.  Congress was concerned with protecting copyright owners' content. *Sheldon v. Plot Com.*, 2016 WL 5107072, *10 (E.D.N.Y. 2016) ("Both the Copyright Act and the DMCA create private rights of action for owners of copyrights….  Accordingly, to bring a valid claim for copyright infringement under either statute, Sheldon must demonstrate that he is ***the owner of the copyright interests*** in the Photograph."). Because Google does not claim injury as a copyright holder, it lacks a cognizable DMCA injury.

---

[10] Google misplaces reliance on *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1167 (C.D. Cal. 2018), and *Craigslist, Inc. v. Doe 1*, 2011 WL 1897423, *4 (N.D. Cal. 2011), for the proposition that CAPTCHAs are "effective" measures.  *First*, these cases pre-date *hiQ*, which rejected the argument that CAPTCHAs limit authorized access to public data.  *Second*, even if CAPTCHAs are "effective measures," "solving them" does not constitute "*circumvention.*" If you ask a bot to select boxes with red lights and it does so, it has not avoided or bypassed the CAPTCHA—it simply completed the task.

### C.     Google Offers No Amendment to Cure Its Pleading Deficiencies.

Unable to show that SerpApi's Motion to Dismiss lacks serious, substantial, and potentially dispositive grounds, Google argues that a stay should nevertheless be denied because it might be able to cure any deficiency. G.Br. 9. But Google is responsible for pleading a claim entitling it to discovery. If its current complaint does not do so, the Court should not grant it that right based on vague promises that a future amendment would not be "futile." *Id*. Indeed, even addressing futility at this stage would require the Court to render an advisory opinion about the sufficiency of a hypothetical amendment addressing deficiencies the Court has not yet identified. That cannot be the standard for a motion to stay. *Heck*, 2022 WL 16579372, at *2 ("The fact that Plaintiff could possibly remedy any deficient allegations … is not germane … on a motion to stay discovery."); *Garcia*, 2025 WL 1755648, at *2 ("whether Plaintiff may be granted leave to amend do[es] not factor into [the discovery stay] factors.").

As Google has elsewhere admitted, the "possibility [of amendment] does not preclude a stay," especially where plaintiffs fail to "identify any amendments that would cure [the complaint's] legal deficiencies." *See* Google's Reply Br., *In re Google Digital Advert.*, No. 20-cv-03556 (N.D. Cal. 2020), ECF 51 at 2 (citing cases). Here, no amendment would solve the problems SerpApi identified. Google cannot magically become the copyright owner over information it scraped from the public web. Nor can it allege that those owners granted Google the authority to implement SearchGuard. And it cannot, through amendment, erase from the millions of other websites in the public domain the exact same copies of the information it now seeks to protect. Ultimately, Google's argument is not that an amendment might cure any deficiency; it is that those deficiencies don't matter. That is not sufficient to avoid a stay.

## III.     DISCOVERY IS NOT NEEDED TO RESOLVE THE MOTION TO DISMISS.

Google concedes that the Court "must determine whether the pending motion can be decided absent additional discovery." *See* G.Br. 3. Google also does not dispute that SerpApi satisfies this standard. Nor could it. SerpApi's motion does not challenge personal jurisdiction or present any other fact-based defense. Instead, it is confined to the four corners of the Complaint. Google does not claim otherwise. It does not accuse SerpApi of relying on materials outside the

Complaint; nor does it seek to convert SerpApi's motion into a motion for summary judgment under Rule 12(d). Rather, SerpApi's motion raises pure legal issues.

This satisfies the second prong of the stay analysis. *See Pereda v. Gen. Motors LLC*, 2022 WL 19692037, *2 (N.D. Cal. 2022) ("the motion turns on [what] Plaintiffs' complaint plausibly alleges…. Further discovery is not required…."); *Kincheloe*, 2021 WL 5847884, at *2 (same); *In re Google Digital Advert.*, 2020 WL 7227159, at *3 ("The Court finds that Google's motion to dismiss is based solely on the allegations in the Complaint" and does "not raise any factual issues. Thus, the Court finds that the motion to dismiss can be decided without additional discovery."); *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) (finding that the district court did not abuse its discretion in granting a motion to stay discovery when a motion to dismiss was pending because no factual issues were raised in the complaint).

In response, Google says the stay should be denied because it would need discovery for *trial* if the motion were *denied*. G.Br. 8. But Google's position here is inconsistent with the position it takes when the shoe is on the other foot. Google has often argued that "the purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine*, 829 F.2d at 738; *see* Defs.' Mot. to Stay Discovery at 13, *Arcell*, No. 22-cv-02499, ECF 36, at 13 (Google quoting *Rutman Wine*).

In any event, Google only points to one of SerpApi's many dispositive grounds for which it says that "discovery into the specifics of what SerpApi is doing will be helpful" "if the Court were to want still more." G.Br. 9. This is a far cry from saying that discovery is necessary, relevant, or could even be permissibly considered on the motion to dismiss.

## IV. PRE-MOTION DISCOVERY NEEDLESSLY IMPOSES SIGNIFICANT BURDEN AND THREATENS COMMERCIAL HARM.

Google does not meaningfully dispute that discovery in this case will be exceptionally voluminous and expensive. *See* G.Br. 6. Its first set of Document Requests and Interrogatories confirm this, seeking system-wide data, multi-year logs, and detailed technical information about SerpApi's operations. The burden of this discovery – and the amount of time and effort the parties will have to devote to identifying the relevant information, extracting it, analyzing it, and

producing it – cannot be overstated. Moreover, the *scope* of discovery is seriously in dispute, which would require extensive motion practice to address.

Google ignores all of this. Instead, it accuses SerpApi of providing only "stereotyped or conclusory statements" of burden. But Google omits the fact that SerpApi filed its motion to stay after Google declined to consent to the stay, but *before* Google served discovery. Certainly, Google cannot fault SerpApi for not reading Google's mind about the scope of discovery it intended to seek.

In any event, Google's discovery requests are extraordinarily broad, requiring production of almost every document in SerpApi's files and databases, including its most sensitive source code, engineering files, and potentially trillions of data points.[11] The burden on Google will also be substantial, as it will need to produce its logs, SearchGuard source code, licensing agreements, and server-system metrology data to determine the frequency of encountering various types of content and anti-bot measures. Whether any part of that discovery is warranted will depend in large part on the outcome of the Motion to Dismiss.

Google's citation to *Optronic* does not change the balance. G.Br. 9-10. There, discovery had already been open for a year before defendants moved to shut it down pending a motion directed at a newly amended complaint. The defendants failed to show undue burden from continuing the ongoing discovery. *See Optronic*, 2018 WL 1569811, at *2. In contrast, discovery here has not yet begun, and threshold issues have only begun to be tested.

---

[11] *See* Munkittrick Decl., Ex. A at RFP 7 ("number of times You accessed any Google Services from January 2022 to the present"), at RFP 8 ("the number of Google Search requests that Your Google APIs have made and the dates those searches were made, including on a daily, weekly, and monthly basis."), at RFP 9 ("All machine-generated or system-generated records … reflecting access to, interaction with, or requests for data from Google Services"), at RFP 40 ("every instance You submitted the same request or query to Google Services multiple times in an effort to bypass or otherwise avoid SearchGuard or JavaScript browser challenges"); *Id.* at ¶ 3, Ex. B at Rog 1 ("the total number of requests to Google Services made by or on behalf of SerpApi, on a weekly basis, since January 1, 2022."), at Rog 2 ("For each internet protocol ("IP") address that SerpApi or its agents have used to access Google Services since January 1, 2022, identify the total number of requests SerpApi and its agents have sent to Google Services using each such IP address.").

And once discovery starts, it will be anything but routine. Google describes itself as the world's largest internet search engine, and, in every filing to-date, it has emphasized the "massive scale" of the conduct at issue. G.Br. 1. But Google also acknowledges that the DMCA cannot protect the vast majority of its search results because the DMCA does not reach non-copyrighted content, such as facts and figures. So, if this case proceeds, the Court will have to determine, search-by-search, what content falls within the ambit of the DMCA protection and what does not. To do this, the amount of discovery – from SerpApi and Google – needed to do this is staggering. Similarly, if the Court concludes that CAPTCHAs are a DMCA-relevant "technological measure," then discovery into which searches trigger CAPTCHAs will be needed. As anyone who has searched Google knows, CAPTCHA encounters are *exceedingly* rare. So, extensive discovery will be required to find the CAPTCHA needles in the larger haystack of search requests. These examples illustrate just some of the complex, highly burdensome issues this Court will need to address, but which might be mooted by the Motion to Dismiss.

Beyond the burden and cost of Google's discovery requests, SerpApi also has grave concerns about giving Google access to its core proprietary technology and technical architecture. *See* Munkittrick Decl., Ex. A at RFPs 1-9, 11-13, 19-20, 22, 28, 39-41. Heightened caution is warranted here, where Google has expressly articulated a desire to put SerpApi out of business. *See* Cmplt. ¶ 43. In such circumstances, allowing a plaintiff early access to a defendant's core proprietary technology – before the viability of the plaintiff's legal theories has been tested – creates a substantial and unnecessary risk of competitive harm.

Conversely, Google will suffer no prejudice from a short stay. Google offers nothing but the usual trope that any delay is a delay. But Google's claim of exigency is undermined by the fact it has not moved for preliminary relief and only served discovery requests *after* SerpApi requested a discovery stay. Google's claim of prejudice is also difficult to square with its own prior litigation positions. *See* Google Mot. to Stay, *May v. Google LLC*, No. 24-cv-01314, ECF 41 at 7 (N.D. Cal. 2024) ("Plaintiff will suffer no prejudice from a stay during the pendency of Defendants' Motion to Dismiss.").

In any event, Google ignores the benefits it too will realize from a stay.  This Court's guidance on the Motion to Dismiss will do more than anything to *define* the proper scope of discovery, which will make meet-and-confers more productive, eliminate unnecessary motion practice, and help the parties craft a proportional discovery plan.  This will streamline discovery and get the case ready for trial *sooner* than would otherwise be the case.  That is why courts often grant stays in this context.  *See Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369, *2 (N.D. Cal. 2020) ("It would be a waste of resources to allow discovery to proceed, and it would be particularly inappropriate to allow discovery while the motion to dismiss is pending because of the potentially massive discovery burden."); *Rutman Wine*, 829 F.2d at 738 ("It is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery.").[12]

## V.    CONCLUSION.

Discovery should be stayed.

---

[12] Google uses its Opposition to malign SerpApi's Initial Disclosures.  *See* G.Br. 1.  But that is not the proper procedural vehicle to raise that issue, especially since it failed to meet and confer about it.  Nor do its complaints have merit, since Rule 26(a)(1)(A)(i) only requires the disclosure of individuals "that the disclosing party may use to support its claims or defenses," not, as Google contends, every individual that has "knowledge[] about … the facts of this case."  G.Br. 1.

Dated: April 13, 2026                    Respectfully submitted,

                                         /s/  Joseph E. Clark
                                         Joseph E. Clark (SBN 281021)
                                         PROSKAUER ROSE LLP
                                         Eleven Times Square
                                         New York, New York 10036
                                         (212) 969-3000
                                         jclark@proskauer.com

                                         Colin R. Kass (*pro hac vice pending*)
                                         PROSKAUER ROSE LLP
                                         1001 Pennsylvania Ave., N.W.
                                         Washington, D.C. 20004
                                         (202) 416-6890
                                         ckass@proskauer.com

                                         David A. Munkittrick (*pro hac vice pending*)
                                         PROSKAUER ROSE LLP
                                         Eleven Times Square
                                         New York, New York 10036
                                         (212) 969-3000
                                         dmunkittrick@proskauer.com

                                         Heather Tovar (SBN 237004)
                                         AD ASTRA LAW GROUP, P.C.
                                         582 Market Street, 17th Floor
                                         San Francisco, CA 94104
                                         (415) 795-3579
                                         htovar@astralegal.com

                                         *Attorneys for Defendant SerpApi, LLC*