DAVID H. KRAMER, State Bar No. 168452
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA  94304-1050
Telephone: (650) 493-9300
Facsimile:   (866) 974-7329
Email:       dkramer@wsgr.com

Attorneys for Plaintiff
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GOOGLE LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>      v.<br><br>SERPAPI, LLC, a Texas Corporation,<br><br>            Defendant. | Case No.:  4:25-cv-10826-YGR<br><br>**GOOGLE LLC'S AMENDED COMPLAINT FOR:**<br><br>**1.  Circumvention of Technological Measures (17 U.S.C. § 1201(a)(1)(A))**<br><br>**2.  Trafficking in Technology Designed for Circumvention of Technological Measures (17 U.S.C. § 1201(a)(2))**<br><br>**JURY TRIAL DEMANDED** |

AMENDED COMPLAINT

CASE NO.: 4:25-CV-10826-YGR

1.     Google Search is the product of enormous investments of human and financial capital.  Through lessons learned from decades of experimentation, enhancements, and expenditures, Google has developed first-in-class methods for understanding what its users are looking for, and locating and recommending relevant content that Google has identified by crawling the World Wide Web in accordance with permissions and instructions that websites convey.

2.     To enhance its popular search engine and assist users in finding what they are looking for, Google incorporates a range of licensed copyrighted content in its Search results.  For example, Knowledge Panels that provide detailed information in response to a specific search query often contain copyrighted photographs that Google licenses from third parties.  Google also licenses and may include in its Search results copyrighted music lyrics, user-generated content, business imagery and reviews, and more.

3.     Defendant SerpApi, LLC ("SerpApi") offers services that "scrape" Google's Search results and the copyrighted content they contain, using deceptive means to automatically access and take the content for free at an astonishing scale and then offering it to various customers for a fee.  Unlike Google, SerpApi does not crawl content from the public web in compliance with sites' permissions, or contract with licensors to obtain content or add any value to it.  Instead, it simply takes Google's Search results and the licensed content Google supplies.  In doing so, SerpApi not only ignores Google's express instructions limiting access and use of the content, but also circumvents technological measures Google has put into place to control such access. SerpApi is thus able to acquire for itself the valuable product of Google's efforts and investment in the licensed content, and denies Google's licensing partners compensation for their works.

4.     In an effort to halt this harmful misappropriation and protect its partner relationships, Google developed and deployed a technological measure, known as SearchGuard, that restricts access to its Search results pages and the copyrighted content they contain. So that it could continue its free riding, however, SerpApi developed a means of circumventing SearchGuard.  With the automated queries it submits, SerpApi engages in a wide variety of misrepresentations and evasions in order to bypass the technological protections Google deployed.

But each time it employs these artifices, SerpApi violates federal law.

5. Section 1201(a)(1) of the Copyright Act prohibits the circumvention of technological measures that control access to copyrighted material and punishes each act of circumvention with statutory damages of between $200 and $2,500 per act. Section 1201(a)(2) of the Copyright Act prohibits the manufacture, offering to the public, or trafficking of services that are marketed for use in circumventing technological measures, and likewise carries statutory damages. SerpApi has violated these provisions on a massive scale.

6. Google seeks redress for SerpApi's statutory violations through this lawsuit. It alleges on personal knowledge as to its own actions and on information and belief as to the actions of others as follows:

## THE PARTIES AND NATURE OF THE ACTION

7. Google is a Delaware limited liability company and a wholly-owned subsidiary of Alphabet, Inc., with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California. Google owns and operates multiple services, including Google Search, a search engine service, accessible, among other places, on the World Wide Web at www.google.com. Google has invested billions of dollars to develop, operate and improve Google Search, endeavoring to provide users with information that Google believes will be most relevant to their search queries.

8. Defendant SerpApi is an entity incorporated in Texas with its principal place of business in Austin, Texas. SerpApi operates an online "Application Programming Interface" ("API") service available at serpapi.com. SerpApi offers its customers paid subscriptions to a "Google Search API," a software service that it advertises as a way to "Scrape Google." Through this service, SerpApi automatically circumvents Google's technological protection measures to access and appropriate Google's Search results, including the substantial copyrighted content that Google licenses from others. SerpApi then offers that content to its customers for a fee.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. §§ 1201, *et seq*.

10.     The Court has personal jurisdiction over SerpApi because SerpApi specifically targeted its unlawful conduct at Google in California, circumventing Google's technological protection measures and accessing and scraping Google's Search results in this state, with knowledge that its actions harm Google in California.  SerpApi has an employee in California who actively promotes its illicit behavior from California.  It also advertises California corporations as customers and commits unlawful acts on their behalf, and offers a "Supported Locations API" that includes over 900 locations in California through which customers can access SerpApi's services.  Google's claims arise directly from SerpApi's contacts with California.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400 because a substantial part of the events giving rise to the claims occurred in this judicial district and because SerpApi may be found here.  At all relevant times, SerpApi directed its wrongful acts at Google, which has its principal place of business within this judicial district.  SerpApi transacts business in this judicial district, including by offering and selling its Google-specific circumvention services to residents of this district.

<strong>DIVISIONAL ASSIGNMENT</strong>

12.     Because this is an intellectual property case, it may be assigned to any division under Civil Local Rule 3-2(c) and N.D. Cal. General Order No. 44.

<strong>BACKGROUND</strong>

<strong>Google's Search Results</strong>

13.     Google's longstanding corporate mission is to "organize the world's information and make it universally accessible and useful."  As a step in fulfilling that mission, Google operates Google Search.  In accordance with websites' instructions and permissions expressed through the industry-standard robots.txt protocol, Google Search locates websites or other information on the Internet that it believes users would find relevant to given queries, organizes that information, and presents a list of such sites and information as "Search results."

14.     Google prepares its Search results using a number of complex algorithms that identify and rank results based on Google's views as to what information the user may find most relevant.  Google is constantly innovating with respect to the process by which it identifies

information of potential relevance.  Google has invested decades of work and billions of dollars to develop and operate Google Search, and the service processes billions of user queries a day.

15.    One example of such innovation is Google's Knowledge Graph, a database containing a compilation of information from a variety of licensed and open sources.  Google's Search results often show information that comes from its Knowledge Graph presented within "Knowledge Panels" alongside links to websites and other information of potential interest to users.  Knowledge Panels offer a snapshot of timely information that Google believes is responsive to users' queries.

16.    Google licenses copyrighted content to include in its Knowledge Graph and display in Knowledge Panels, including high resolution images.  For example, in response to a user's query for "Willie Mays," Google may display search results including a Knowledge Panel like this:



Google obtained the image of Mays on the top left under a copyright license.

17.     Similarly, a query for "Babe Ruth" may display a Knowledge Panel result including images Google licenses as shown below:



18.     Other Search results featuring licensed, copyrighted content include those containing music lyrics, merchant-supplied product and business images and descriptions, and all manner of user-generated content.

### SerpApi's Operations

19.     SerpApi was founded in 2017 after founder Julien Khaleghy concluded that "scraping images from Google was an intensive process."

20.     SerpApi's business model is parasitic.  At tremendous scale, it appropriates the output of other services that have made substantial investments to generate it, and delivers the content to third parties for a fee.  To do so, SerpApi uses automated means to scrape these other services – generating billions of artificial requests and then copying and selling the responses. SerpApi does not compensate the services it scrapes for the output or for the costs of responding to the massive burdens their automated processes impose on the services' computer infrastructures.

Its scraping invariably violates the services' governing agreements and flouts access restrictions that those services convey to automated crawlers or "bots" through robots.txt instructions.

21.　　SerpApi likewise does not get permission from or compensate the copyright holders whose content it grabs and redistributes.  It pays them no license fees, shares no advertising or subscription revenue and does not drive visitors to their websites.  SerpApi is also not subject to agreements with rights holders to honor deletions or removals of content, or other limitations on the use of that content.  SerpApi simply takes the licensed content and sells it as it pleases for its own benefit.

22.　　Google's high quality, content-rich Search results make it a favorite target for SerpApi's scraping operation and its customers.  On its website, SerpApi highlights paid subscriptions to a "Google Search API," an automated software tool that SerpApi advertises as a way to access and "Scrape Google."  Google estimates that SerpApi sends hundreds of millions of artificial search requests each day to Google.  Over the last two years, that volume has increased by as much as 25,000%.

23.　　SerpApi also offers and advertises services specifically targeting the copyrighted content that Google includes in its Search results with specialized services to scrape Google's Knowledge Panels.  As it explains in its marketing materials, "[f]or some requests, Google Search includes a 'Knowledge Graph' block, typically on the right side. SerpApi is able to extract and make sense of this information."

24.　　SerpApi knows full well that Google does not want its Search results to be scraped, but SerpApi does not care.  In fact, it goes to great lengths to hide its activities.  According to SerpApi's blog, its services include default features to "avoid being detected and blocked by Google," including the "latest technologies to mimic human behavior."

25.　　For Google, SerpApi's automated scraping not only consumes substantial computing resources without payment, but also disrupts Google's content partnerships.  Google licenses content so that it can enhance the Search results it provides to users and thereby boost its competitive standing.  SerpApi undermines Google's substantial investment in those licenses, making the content available to other services that need not incur similar costs.

26.     SerpApi's scraping of Google Search results also impacts the rights holders who license content to Google.  Without permission or compensation, SerpApi takes their content from Google and widely distributes it for use by third parties.  That, in turn, threatens to disrupt Google's relationship with the rights holders who look to Google to prevent the misappropriation of the content Google displays.  At least one Google content partner, Reddit, has already sued SerpApi for its misconduct. *Reddit Inc. v. SerpApi LLC et al.*, No. 25-cv-8736 (S.D.N.Y.), ECF No. 55 ("Reddit First Amended Complaint").

## Google's SearchGuard

27.     Google bears both fixed and marginal costs to process queries that are sent to Google Search.  It hopes to offset those costs and generate revenue from such queries, but does not do so when the queries are automated.  Instead, those queries impose a deadweight loss on Google.  Accordingly, Google prohibits automated access to and scraping of its Search results in its Terms of Service Agreement with users.  The agreement expressly forbids the use of "automated means to access content from any of [its] services in violation of the machine-readable instructions on our web pages (for example, robots.txt files that disallow crawling, training, or other activities)."   Google's robots.txt instructions also make clear to automated crawlers, like SerpApi's, that Google's Search results are not to be crawled.

28.     To backstop its contractual prohibition and robots.txt instructions, to further protect its investments in copyrighted content, to help safeguard the rights of the rights holders that supply it, and to help preserve its relationships with those rights holders, Google developed, at considerable expense, a technological protection measure called SearchGuard.

29.     SearchGuard is the product of tens of thousands of person hours and millions of dollars of investment.  Its purpose is to prevent unauthorized third parties from automatically accessing Google's Search results and appropriating the content in them *en masse*, but to do so without degrading the Google Search experience for ordinary users.

30.     Copyright holders have authorized Google to implement access controls like SearchGuard for the content they license to Google, and in some cases insisted that Google do so. Google's authorization takes many forms.  For example, Google has an agreement with a

AMENDED COMPLAINT                                    -7-                          CASE NO.:  4:25-CV-10826-YGR

prominent licensing partner that holds copyrights to millions of works that it licenses Google to use in its Search results. Under the parties' agreement, versions of which date back to 2017, Google is not only authorized, it is obligated to use commercially reasonable efforts to safeguard the licensed content against unauthorized third-party access. Other license agreements contain similar obligations. For example, another major content provider requires that Google ensure the content it licenses will not be available for download by third parties, thereby authorizing the implementation of technical access controls.

31. In other cases, Google's authorization to implement access control measures like SearchGuard is part and parcel of the grant of licenses themselves, as Google and its licensors recognize that the value of the licensed rights would be undermined if others were free to access, take and resell the licensed content without restriction. For example, Google has a licensing agreement with Reddit, under which Reddit licenses Google to use the copyrighted content of both Reddit and its users in Search Services. The agreement directs Google not to enable third parties to extract and independently commercialize the licensed content, making clear Google has the authorization to prevent such behavior through access control mechanisms such as SearchGuard. Indeed, as Reddit made clear in its own lawsuit against SerpApi, "Reddit has always authorized its partners, including Google, to protect [the licensed] content from misuse and prevent unauthorized access to that data." Reddit First Amended Complaint ¶ 111. Reddit has the power to do so both for its own copyrighted works as well as the works that Reddit's users licensed to it.

32. Google's licensing partners have also expressly requested that Google prevent unauthorized access to licensed content. For example, when Reddit suspected that scrapers like SerpApi were accessing, taking, and reselling the content that Reddit had licensed to Google, it specifically asked Google to employ technical measures to prevent such unauthorized appropriation.

33. Still further authorization to implement access controls like SearchGuard on licensed content comes from the Google Privacy Policy, which describes how Google will handle user information, including the user-uploaded and licensed content they supply, such as photos or reviews. Under the Privacy Policy, which users agree applies to their use of Google services,

AMENDED COMPLAINT                              -8-                      CASE NO.:  4:25-cv-10826-YGR

Google says it will protect such content from "unauthorized access" and generally enable users to remove such content. One way in which Google attempts to do so is through technological measures like SearchGuard.

34. SearchGuard effectively controls access to copyrighted works because, in the ordinary course of its operation, it requires the application of information to gain access to Google Search results and the copyrighted content they contain.

35. SearchGuard works in part by sending a JavaScript "challenge" to search queries Google receives from unrecognized sources to validate that the query to Google comes from a real user as opposed to automated software. Google's computer system transmits JavaScript code that calls upon the user's browser to send Google a "solve" for the challenge, that is, to send Google specific information regarding the browser and user generating the request. For human users, the solve is relatively straightforward; their browsers run the JavaScript code and send back the required information seamlessly, without disrupting the user experience. But automated systems, like SerpApi's, that submit automated queries at a massive scale typically cannot solve the SearchGuard challenge. As a result, SearchGuard denies them access to Google's Search results and the copyrighted works within them.

### SerpApi's Circumvention of SearchGuard

36. When SearchGuard launched in January 2025, it effectively blocked SerpApi from accessing Google's Search results and the copyrighted content of Google's partners and users. But SerpApi immediately began working on a means to circumvent Google's technological protection measure. SerpApi quickly discovered means to do so and deployed them.

37. SerpApi's answer to SearchGuard is to mask the hundreds of millions of automated queries it is sending to Google *each day* to make them appear as if they are coming from human users. SerpApi's founder recently described the process as "creating fake browsers using a multitude of IP addresses that Google sees as normal users."

38. SerpApi's fakery takes many forms. For example, when SerpApi submits an automated query to Google and SearchGuard responds with a challenge, SerpApi may misrepresent the device, software, or location from which the query is sent in order to solve the

AMENDED COMPLAINT                                    -9-                          CASE NO.: 4:25-cv-10826-YGR

challenge and obtain authorization to submit queries. Additionally or alternatively, SerpApi may solve SearchGuard's challenge with a "legitimate" request and then syndicate the resulting authorization, that is, share it with unauthorized machines around the world, to enable their "fake browsers" to generate automated queries that appear to Google as authorized. It also uses automated means to bypass CAPTCHAs, another aspect of SearchGuard that tests users to ensure they are humans rather than machines.

39. SerpApi routinely boasts of its circumvention of SearchGuard. In a recent blog post, for example, it explained that SearchGuard had made SerpApi's "web scraping more difficult," but claimed it was "fortunate to be minimally impacted" because its services had "already pre-solved Google's JavaScript challenge." SerpApi also bragged that when "Google later increased the difficulty" of SearchGuard challenges, it "briefly interrupted our ability to perform web searches. However, thanks to the dedicated efforts of our engineers we were quickly able to resolve the problem." And SerpApi promised that if Google implements new technological protection measures, SerpApi intends to bypass those as well: "It's hard to say what Google might do going forward[.] However, at SerpApi we're confident in our ability to handle any new variations to these changes Google might introduce."

40. SerpApi's circumvention of technological protection measures in general, and Google's in particular, is the principal service it sells. It boldly promises that potential customers "don't need to care about … captcha, IP address, bots detection, maintaining user-agent, HTML headers, [or] being blocked by Google." That, according to SerpApi, is because it uses "advanced algorithms to bypass CAPTCHAs and other anti-bot mechanisms, ensuring uninterrupted and efficient data extraction."

### FIRST CAUSE OF ACTION

### (VIOLATION OF THE DMCA, 17 U.S.C. § 1201(A)(1)(A))

41. Google incorporates by reference each and all of the allegations in the foregoing paragraphs, as if fully set forth herein.

42. Google's Search results pages contain countless copyrighted works that third party rights holders have licensed to Google to include in Google Search results.

43.    Google's SearchGuard is a technological measure that effectively controls access to the copyrighted works that are licensed to appear in Google's Search results within the meaning of 17 U.S.C. § 1201.  In the ordinary course of its operation, SearchGuard requires the authorized application of information to gain access to the works.

44.    To the extent Google needs authorization from copyright holders to implement a technological measure like SearchGuard, Google had and has such authorization.

45.    Without authorization from the relevant rights holders, SerpApi has, on billions of separate occasions, circumvented SearchGuard in order to gain access to Google Search results and the copyrighted content they contain.

46.    Each time SerpApi has circumvented SearchGuard, it has violated Section 1201(a)(1) of the Digital Millennium Copyright Act.

47.    SerpApi's statutory violations have caused and will continue to cause harm to Google: (i) through the direct imposition of costs to respond to SerpApi's billions of automated queries; (ii) by undermining Google's investment in the copyrighted content it has licensed; (iii) by threatening to disrupt Google's relationship with content licensors; and (iv) by forcing Google to incur substantial costs to develop and enhance technological measures to protect against SerpApi's unauthorized scraping of licensed copyrighted content.

48.    SerpApi has received and will continue to receive significant financial benefits from its acts of circumvention by selling the Google Search results that it is only able to access by virtue of its circumventions.

49.    Google is entitled to recover from SerpApi the actual damages Google has suffered because of SerpApi's statutory violations as well as any additional, non-duplicative profits SerpApi has earned from them.  Google may alternatively elect to recover statutory damages of no less than $200 and as much as $2,500 for each of SerpApi's many statutory violations.

50.    SerpApi's circumvention is ongoing and is causing Google irreparable harm because SerpApi will not be able to pay the damages it will owe for its misconduct.  Given the massive statutory liability SerpApi has incurred and will continue to incur in the future – a figure that increases with hundreds of millions of additional violations *every day* – Google's harm will

not be remedied by a statutory damages award because SerpApi will be unable to pay it. SerpApi reportedly earns a few million dollars in annual revenue, but already faces liability that is orders of magnitude higher and growing.

51. Google thus will continue to suffer harm for which it has no adequate remedy at law unless SerpApi's statutory violations are enjoined by the Court.

WHEREFORE, Google prays for judgment as set forth below.

### SECOND CAUSE OF ACTION

**(VIOLATION OF THE DMCA, 17 U.S.C. § 1201(A)(2))**

52. Google incorporates by reference each and all of the allegations in the foregoing paragraphs, as if fully set forth herein.

53. SerpApi manufactures, offers to the public, provides, or otherwise traffics in services and technology that function to circumvent SearchGuard, a Google technological measure that effectively controls access to copyrighted works.

54. SerpApi's services and technology have, at most, a limited commercially significant purpose beyond the circumvention of SearchGuard, and SerpApi has marketed its services and technology with knowledge that they are and will be used to circumvent SearchGuard. SerpApi's blog post, for example, brags extensively about the company's circumvention of SearchGuard, and its plans to continue circumventing Google's technological measures.

55. By manufacturing, offering to the public, providing, and otherwise trafficking in its circumvention services and technology, and marketing them with knowledge that they will be used to circumvent SearchGuard, SerpApi violates Section 1201(a)(2) of the Digital Millennium Copyright Act.

56. SerpApi's statutory violations have caused and will continue to cause harm to Google: (i) through the direct imposition of costs to respond to SerpApi's billions of automated queries; (ii) by undermining Google's investment in the copyrighted content it has licensed; (iii) by threatening to disrupt Google's relationship with content licensors; and (iv) by forcing Google to incur substantial costs to develop and enhance technological measures to protect against SerpApi's unauthorized scraping of licensed copyrighted content.

57.    SerpApi has received and will continue to receive significant financial benefits from providing and marketing its services and tools for the purpose of circumvention.

58.    Google is entitled to recover from SerpApi the actual damages Google has suffered because of SerpApi's violations of 1201(a)(2) as well as any additional, non-duplicative profits SerpApi has earned from them.  Google may alternatively elect to recover statutory damages of no less than $200 and as much as $2,500 for each of SerpApi's many statutory violations.

59.    SerpApi's statutory violations are ongoing and are causing Google irreparable harm because SerpApi will not be able to pay the damages it will owe for its misconduct.  Given the massive statutory liability SerpApi has incurred and will continue to incur in the future, Google's harm will not be remedied by a statutory damages award because SerpApi will be unable to pay it.  SerpApi reportedly earns a few million dollars in annual revenue, but already faces liability that is orders of magnitude higher and growing.

60.    Google thus will continue to suffer harm for which it has no adequate remedy at law unless SerpApi's statutory violations are enjoined by the Court.

WHEREFORE, Google prays for judgment as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Google prays for an order and judgment against SerpApi as follows:

a.    Enjoining SerpApi, its officers, agents, servants, employees, attorneys, affiliated companies, assigns and successors in interest, and those persons in active concert or participation with them from violating 17 U.S.C. § 1201 *et seq.*, by circumventing Google's technological measures and/or by designing, manufacturing, marketing, selling, offering to the public, or otherwise trafficking in any technology, product, service, or device that is designed or marketed to circumvent Google's technological measures;

b.    Compelling the destruction by SerpApi of any technology, device or product involved in its violations of Section 1201;

c.    Awarding Google statutory damages for each of SerpApi's violations of Section 1201, or alternatively, at Google's selection, Google's actual damages and SerpApi's profits from such violations;

d.      Awarding Google its costs and attorneys' fees pursuant to 17 U.S.C. § 1203;

e.      Prejudgment and post-judgment interest;

f.      Such other and further relief as the Court may deem proper.

**JURY DEMAND**

Google hereby demands a jury trial of all issues triable by a jury.

Dated: August 10, 2026                      WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation


                                            By:   */s/ David H. Kramer*
                                                  David H. Kramer
                                                  E-mail: dkramer@wsgr.com

                                                  Attorneys for Plaintiff
                                                  GOOGLE LLC