Colin R. Kass (*pro hac vice*)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 416-6890
ckass@proskauer.com

David A. Munkittrick (*pro hac vice*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000
dmunkittrick@proskauer.com

*Attorneys for Defendant SerpApi, LLC*
*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GOOGLE LLC,<br><br>Plaintiff,<br><br>v.<br><br>SERPAPI, LLC,<br><br>Defendant | 25-cv-10826-YGR<br>Hon. Yvonne Gonzalez Rogers<br><br>Time: September 29, 2026, at 2:00 P.M.<br>Court: Courtroom 1, 4th Floor |

**<u>SERPAPI'S MOTION TO DISMISS GOOGLE'S AMENDED COMPLAINT</u>**

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that a hearing on SerpApi, LLC's Motion to Dismiss will take place on September 29, 2026, at 2:00 P.M.

The motion seeks dismissal for failure to state a claim under Rule 12(b)(6).

**STATEMENT OF ISSUES TO BE DECIDED**

1. Should Google's claims be dismissed for failure to plausibly allege that any copyright owner authorized Google to implement SearchGuard to control access to that owner's copyrighted works?

   a. Did Google fail to plausibly allege that its undisclosed and unquoted agreement with an unidentified "licensing partner" (AC ¶ 30) confers copyright owner authorization to implement SearchGuard?

   b. Did Google fail to plausibly allege that its undisclosed and unquoted agreement with an unidentified "content provider" (AC ¶ 30) confers copyright owner authorization to implement SearchGuard?

   c. Did Google fail to plausibly allege that its undisclosed and unquoted agreement with Reddit (AC ¶ 31) confers copyright owner authorization to implement SearchGuard?

   d. Does Google's Privacy Policy (AC ¶ 33) confer copyright owner authorization to implement SearchGuard?

2. For purposes of preservation, should Google's claims under the DMCA be dismissed for the reasons set forth in SerpApi's prior motion to dismiss, which the Court rejected but which nonetheless also apply to the Amended Complaint?

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. GOOGLE FAILS TO PLAUSIBLY ALLEGE COPYRIGHT OWNER AUTHORITY TO IMPLEMENT SEARCHGUARD. .......... 5

A. Google Fails to Allege the Actual Terms of the Agreements Purporting to Confer Implied Authority to Implement SearchGuard. .......... 5

B. The Amended Complaint Does Not Plausibly Allege that the Unidentified "Licensing Partner" Granted Authority to Implement SearchGuard. .......... 6

C. The Amended Complaint Does Not Plausibly Allege that the Unidentified "Content Provider" Granted Authority to Implement SearchGuard. .......... 9

D. The Amended Complaint Does Not Plausibly Allege that the Reddit Agreement Granted Copyright Owner Authority to Implement SearchGuard .......... 10

1. Google Fails to Allege that Reddit-Related Content It Incorporates Into its Search Results is Copyrightable. .......... 10

2. Google Fails to Allege that Reddit's Users Have Granted Google the Authority to Implement SearchGuard. .......... 11

3. Google Fails to Allege that Reddit Granted Google the Authority to Implement SearchGuard for its Own Copyrighted Content. .......... 14

E. Google's Privacy Policy Does Not Confer Authorization "of the Copyright Owner." .......... 15

III. PRESERVATION OF PREVIOUSLY RAISED GROUNDS. .......... 17

IV. CONCLUSION .......... 18

# TABLE OF AUTHORITIES[1]

**Page(s)**

**CASES**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................1, 3, 5

*Hattler v. Ashton*,
2017 WL 11634742 (C.D. Cal. 2017)....................9

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022)....................17

*Int'l Mezzo Techs. Inc. v. Airborne ECS LLC*,
2025 WL 3513950 (W.D. Wash. 2025)....................6

*Langan v. United Servs. Auto. Ass'n*,
69 F. Supp. 3d 965 (N.D. Cal. 2014)....................6

*MDY Indus. v. Blizzard*,
629 F.3d 928 (9th Cir. 2010)....................9

*Meta Platforms, Inc. v. Bright Data Ltd.*,
2024 WL 251406 (N.D. Cal. 2024)....................6

*Reddit, Inc. v. SerpApi LLC*,
2026 WL 2210094 (S.D.N.Y. 2026)....................11, 16

*Viral DRM LLC v. Seven W. Media Ltd.*,
768 F. Supp. 3d 1025 (N.D. Cal. 2025)....................6

**STATUTES**

17 U.S.C § 106....................9, 13

17 U.S.C. § 1201.................... *passim*

17 U.S.C. § 1203....................18

[1] Unless otherwise specified, all emphasis added, initial capitalizations conformed without brackets, and internal citations and quotation marks are omitted.

## I. INTRODUCTION

This case is a shadow of its former self. Google began by seeking to block access to *all* its *public* search results. The Court rightly rejected Google's attempt to convert the DMCA into a general-purpose anti-scraping statute, dismissing with prejudice any claim for search results not involving copyrighted works. *Order*, ECF 42 at 12-14. The Court also dismissed, without prejudice, any claim relating to *licensed* copyrighted content because Google failed to allege that its license agreements conferred *copyright owner* authorization to implement SearchGuard, Google's branding for its own anti-bot measures. *Id*. Google thus had two jobs on amendment: (1) identify the *copyrighted* works at issue, and (2) plausibly allege copyright owner authorization to implement SearchGuard over those works. Google's Amendment does neither.

Google's Amendment only covers a small subset of Google's search results. It does not seek to resurrect claims relating to non-copyrighted content, including the links that make up the vast bulk of its search results and its AI-generated Gemini answers to users' queries. Nor does it resurrect claims relating to copyrightable content *Google itself scrapes from third-party websites*. Those claims, though still technically part of the pleading, must be dismissed *with prejudice*.

All that remains is some unspecified (and unpled) content that Google non-exclusively licenses for display alongside its search results. For this content, Google cites four sources of authority: a license agreement with an unidentified "licensing partner," a license agreement with an unidentified "content partner," an agreement with Reddit, and its own privacy policy. AC ¶¶ 30-33. None of the allegations relating to these four sources plausibly allege copyright owner authority to implement SearchGuard.

***Google Fails to Allege the Terms of Its License Agreements***. Google does not allege that any of the four sources expressly authorize the use of SearchGuard or any anti-bot technology. Instead, Google asks this Court to find that they confer *implied-in-law* authority to block automated access to the (unspecified) works at issue. That is a question of law for the Court, not a "fact" the

Court must accept as true at the pleading stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("courts are not bound to accept as true a legal conclusion couched as a factual allegation").

Google chose not to place before the Court the three license agreements it proffers as the cure for its prior pleading deficiencies. Nor does it quote the operative terms. It merely substitutes its own characterization of the terms, and then asks the Court to infer additional implied legal rights – even beyond its own characterization – that it argues should flow from its paraphrasing. But contract interpretation starts with the text. And without the text, "the Court cannot reasonably infer that such license agreements grant Google authorization to deploy technological measures to control access to the copyrighted content at issue." *Order*, 14. Where a plaintiff claims a contract confers implied legal rights, it must put the actual contractual language before the Court. Google's failure to do so warrants dismissal.

***Google Fails to Allege Authorization from Its Unidentified "Licensing Partner."*** Google alleges that an unnamed "licensing partner … obligated [Google] to … safeguard the licensed content against unauthorized third-party access." AC ¶ 30. Google does not allege what this content is, where it appears, or that SerpApi accessed it. More fundamentally, Google does not disclose what constitutes "unauthorized third-party access." Nothing in the Amended Complaint suggests that access to *public search results* – which requires no user account, password, or credential to access – is "unauthorized access" under the license agreement.

Google instead appears to be referring to its own decision to block bots for the definition of "unauthorized access." But its unilateral decision is not copyright owner authorization. Indeed, it would be anomalous for Google to seek *permission* from others to prevent automated access to its own website, since Google most likely believes it has a unilateral right to block bots if it wants to. Regardless, Google's own desires about what level of access to allow are irrelevant to what the copyright owner actually authorized under the license agreement.

A term requiring Google to prevent "unauthorized access" does not suggest that the unnamed licensing partner can force Google to adopt anti-bot measures, and thus, the term does not implicitly authorize such measures. The term could just as easily refer to the use of standard

security measures to prevent hacking of Google's internal servers—an issue that has nothing to do with automated access to a public website. So the allegation that the agreement prevents "unauthorized access," without more, does not satisfy "the need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" illegality. *Twombly*, 550 U.S. at 557.

***No Authorization from the Unidentified "Content Provider."*** In a single sentence, Google also claims copyright owner authorization because an unidentified "content provider requires that Google ensure the content it licenses will not be available for *download* by third parties, thereby authorizing [in Google's view] the implementation of technical access controls." AC ¶ 30. This has the same defect. An anti-download provision is not an anti-access provision. Nor can Google's paraphrase of the contract be literally true. If it were, Google would be in breach every time a user copies a link or saves an image from google.com—including when Google's own counsel copied the Willie Mays and Babe Ruth pictures.[2] *Id*. ¶¶ 16, 17.

There are more sensible readings. One is that it is an anti-sublicensing agreement, prohibiting Google from *itself* reselling the content. Another sensible read is that it prevents Google from affirmatively including a "download" button on its search page. Google's interpretation, in contrast, would give the content partner contractual oversight over Google's bot-detection measures, stripping Google of its control over its own website. Because that is an implausible interpretation, the Court cannot, without more, infer that a paraphrased obligation to not make the content "available for third party download" grants authorization to employ anti-bot measures to restrict *access* to Google's public search engine.

***No Authorization from the Reddit Agreement.*** Google's citation to its agreement with Reddit similarly fails to plausibly allege SearchGuard authorization. As an initial matter, Google

---

[2] Notably, the Amended Complaint's *only* alleged instances of protected content are the licensed images of Babe Ruth and Willie Mays. But Google does not allege that they are copyrighted images. The Babe Ruth photo is a 1921 image now in the public domain. The Willie Mays photo is a 1951 image, which would have required affirmative acts to maintain the copyright, none of which have been alleged. More fundamentally, Google does not allege that either image is subject to any of its four alleged sources of copyright owner authority.

does not contend that Reddit is the copyright owner for its users' posts. Nor does it allege that those users have authorized Google to implement SearchGuard. Instead, Google simply asserts that "Reddit has the power to [authorize copyright access controls] for … the works that Reddit's users licensed to it." AC ¶ 31. That too is a legal conclusion. Google cites no agreement granting Reddit authority from its users to employ access controls itself or to further authorize third-parties, like Google, to do so. So, any claim relating to Reddit user content must be dismissed.

As to Reddit's own content, Google has similarly failed to allege that *any* copyrighted content created and owned by Reddit is incorporated on google.com. Facts, figures, and information are not copyrightable, and snippets of Reddit posts that may appear on google.com do not necessarily have the requisite degree of original expression to qualify for copyright protection. Because this Court has held that non-copyrighted content is outside the reach of the DMCA, Google's failure to allege facts from which the Court can plausibly infer that the snippets qualify for protection is insufficient to overcome this Court's order dismissing such claims with prejudice.

But even if the Reddit content qualified for protection, Google has not alleged that its Reddit agreement authorizes Google's anti-bot measures. Google has not placed the agreement before the Court. It does not even paraphrase its terms. It quotes Reddit's separate Amended Complaint against SerpApi in which Reddit purports to *characterize* the agreement. Google even alters that characterization by bracketing the word "[licensed]," so it is unclear if the parties entered into a license agreement at all. But even if they did, there is no basis to infer that the agreement mentions anti-bot technologies or requires their adoption.

***Google's Privacy Policy Does Not Confer DMCA Authorization***. Google also claims that "authorization to implement access controls like SearchGuard on licensed content comes from the Google Privacy Policy." AC ¶ 33. But the Policy does no such thing. The Policy is not geared to copyright protection; it is designed to protect users' ***privacy***, not *public data*. It applies to all of Google's services, such as Gmail, where users disclose or upload private information, or where Google collects personally identifiable information, like phone numbers and credit card information. Google does not allege that this user information is copyrighted, that it was used in

Google's search results, or that SerpApi scraped it. But even if it had, the Privacy Policy is not a grant of authority to employ anti-bot technologies.

Copyright owners' authorization over their content comes from the license agreement in Google's Terms of Service, which contains no authorization or obligation to employ anti-bot technologies. The void is not filled by the Privacy Policy. It is nothing but a unilateral notice informing users of the data Google collects about them and how it uses it. It is not an authorization-granting document. It may disclose Google's intent to protect users' private information, but it does not speak to, or constitute implied-in-law contractual authorization, to use anti-bot technology to restrict access to Google's public search results.

The Amended Complaint should be dismissed with prejudice.

## II. GOOGLE FAILS TO PLAUSIBLY ALLEGE COPYRIGHT OWNER AUTHORITY TO IMPLEMENT SEARCHGUARD.

### *A. Google Fails to Allege the Actual Terms of the Agreements Purporting to Confer Implied Authority to Implement SearchGuard.*

Google's failure to place before the Court the actual language of the agreements supposedly supplying authority to implement SearchGuard is fatal. In its Order of Dismissal, this Court concluded that Google must plead *facts* from which the Court can *infer* that Google has copyright owner authorization to implement SearchGuard. *Order*, 13-14. But Google does not allege that any of the three agreements expressly authorizes SearchGuard, any anti-bot technology, or any other copyright control measure. Nor does Google quote the contractual language on which it relies. Instead, it offers only its own characterization of what the agreements provide. But those characterizations are legal conclusions masquerading as facts. The Court need not accept them.

The Supreme Court confronted this same problem in *Twombly*. Plaintiffs there alleged that the defendants agreed to boycott competing telephone carriers. But the Court declined to credit that allegation as fact, construing it instead as a request to draw a legal conclusion from the surrounding facts. "Although in form a few stray statements speak directly of agreement," the Court noted, "on a fair reading these are merely legal conclusions resting on the prior allegations." *Twombly*, 550 U.S. at 564. Google does the same. It asks the Court to infer implied-in-law

authorization to implement SearchGuard from unquoted contractual terms. That is a request for a legal conclusion, not a well-pled allegation of *fact*.

To determine what authority was implicitly conveyed, the Court must look at the contracts themselves. "Contract interpretation is a question of law" and "interpretation starts … with the text of the contract." *See Meta Platforms, Inc. v. Bright Data Ltd.*, 2024 WL 251406, 10 (N.D. Cal. 2024) (rejecting Meta's characterization of the Terms of Service, and finding scraping of public data was not "unauthorized"); *see also Viral DRM LLC v. Seven W. Media Ltd.*, 768 F. Supp. 3d 1025, 1030 (N.D. Cal. 2025) (looking to the specific terms of an incorporated licensing agreement, rather than plaintiff's conclusory characterization of the rights it conferred, to determine the scope of the alleged authorization); *Int'l Mezzo Techs. Inc. v. Airborne ECS LLC*, 2025 WL 3513950, *6 (W.D. Wash. 2025) (dismissing breach-of-contract claim where plaintiff failed to allege how the agreement defined the relevant terms, leaving the court unable to determine whether the challenged conduct fell within its scope); *Langan v. United Servs. Auto. Ass'n,* 69 F. Supp. 3d 965, 979–80 (N.D. Cal. 2014) (dismissing claim based on contract provisions where "there is no way for the Court to know even generally what the terms of the contract or contracts were, or even how many agreements are at issue").

Because Google failed to supply the Court with the text of the agreements, it has failed to "allege factual matter that raises the inference that copyright owners authorized the implementation of SearchGuard as a technological measure to control access to copyrighted content." *Order* 14. Its amended claim must, therefore, be dismissed.

***B. The Amended Complaint Does Not Plausibly Allege that the Unidentified "Licensing Partner" Granted Authority to Implement SearchGuard.***

Google alleges it has an agreement with an unidentified "licensing partner" that obligates it to safeguard the licensed content against unauthorized third-party access. AC ¶ 30. This allegation fails to cure the defects the Court identified in its Dismissal Order for two reasons.

*First*, Google does not allege that the licensing partner is the "copyright owner." It only alleges that the licensing partner "*holds* copyrights to millions of works." AC ¶ 30. But a copyright

holder and copyright owner are not necessarily the same. A person can "hold" millions of copyrights – as a distributor or aggregator – for purposes of sublicensing, marketing, and sale, without being a statutory copyright owner for any of them. Since this Court required Google to allege authority of the "*copyright owner*," as the statutory text demands, Google's deliberate choice not to use those words cannot be excused as mere sloppy drafting.

*Second*, Google's characterization of its contractual obligations – to prevent "unauthorized access" – does not establish that the partner authorized SearchGuard, because Google does not allege that automated access to google.com – a public website – is "unauthorized access" under the license agreement.

Google does not allege that the license agreement expressly confers any authority to implement SearchGuard, or any other anti-bot measure. Instead, it argues that such authority should be implied-in-law because, without it, Google could not comply with its obligation to "safeguard" the partner's content from "unauthorized access." AC ¶ 30. But Google's own characterization of the license agreement does not support this inference.

None of the *allegations* about the license agreement quote contractual terms—not even the pivotal term "unauthorized access." If the agreement even uses that term, it is not apparent that it encompasses mere automated access to google.com, a public website that anyone in the world can freely access. Not even Google's paraphrase claims that the agreement applies to automated access, anti-bot technology, or SearchGuard. If Google cannot allege it, this Court cannot infer it.

Nor is it clear that the term "unauthorized access" reaches automated traffic to a public website. The term can mean many things, depending on the text of the agreement. In ordinary usage, "unauthorized access" does not refer to access by unlicensed individuals; most people who search google.com neither need nor receive licenses. It refers instead to access by hackers of internal computer systems. A web platform typically has many internal servers housing licensed content as a discrete collection. A licensor may reasonably want assurance that those servers are protected against hacking, without restricting the platform's delivery of selected content as part of

an integrated search result or service. Under that reading, "unauthorized access" has the same meaning the CFAA ascribes to it, not the meaning Google asserts, without citation.

Instead of facts and quotes, Google relies on artful pleading. The Amended Complaint defines "authorized access" exactly once. In paragraph 27, Google alleges that *it* "prohibits automated access to and scraping of its Search results in its Terms of Service Agreement with users." AC ¶ 27. Google then pretends that this definition carries through the rest of the Amended Complaint, as if it were some universal truth incorporated into every agreement it has with everyone in the universe. That is sleight-of-hand, not well-pled fact.

Google does not allege that the licensing agreement incorporates Google's Terms of Service, or otherwise adopts the Amended Complaint's definition of "unauthorized access." Typically, copyright owners determine the type of access they want to permit. It would be anomalous for a copyright owner to divest itself of this intrinsic authority by letting Google make this decision unilaterally according to its whims.

Ultimately, there are only four possibilities, each fatal to Google's claim. Either the agreement is silent, it does not reach automated access, it lets the copyright owner define unauthorized access, or it delegates the decision to Google. If the agreement is silent or does not reach automated access, it cannot confer implied authority to implement SearchGuard. If the copyright owner defines unauthorized access, Google would have needed to allege the exercise of that authority to prohibit automated access to Google's public website. It did not. Nor did Google allege delegated authority. So this Court cannot infer it.

With no facts to infer that the licensing agreement obligates Google to prevent automated access to google.com, its implied-authority claim fails. What remains is the same defect that led to the dismissal of the original claims: a failure to plead facts from which this Court can infer copyright owner authority to implement SearchGuard.

### *C. The Amended Complaint Does Not Plausibly Allege that the Unidentified "Content Provider" Granted Authority to Implement SearchGuard.*

In a single sentence, Google alleges that an undisclosed content-provider agreement requires it to ensure that licensed content will not be available for download by third parties. AC ¶ 30. That sole allegation does not establish copyright owner authority to implement SearchGuard.

*First*, Google does not allege that the content is copyrighted; that the content provider owns the copyright; or that the content appears in Google's search results. Each omission is fatal. If the content is not copyrighted, the Court already dismissed the claim with prejudice. If the content provider is not the copyright owner, the agreement cannot supply the requisite statutory authorization. And if Google did not use the content in the search results, it has not alleged circumvention at all.

*Second*, Google's amendment fails because a paraphrased obligation to prevent "download by third parties" is not authorization to implement SearchGuard. Google does not claim express authorization; it again relies on implied-in-law authorization. But the Court cannot find implied authorization without knowing what the contract actually says. Without quoted text, the Court can't tell if the operative term – "download by third parties" – even appears in the contract. Nor can the contract rationally say what Google claims. If it literally prevented all third-party downloads, Google would be in breach every time a user takes a screenshot of a search page containing the licensed content. Because that would be absurd, the contract cannot plausibly say that. That is a reason to *reject* Google's characterization, not a license for the Court to infer a different, unalleged interpretation.

But even if the contract prevented downloading, "downloading" is not "access." Downloading is copying, and copying is governed by ordinary copyright infringement because copying is one of the exclusive rights under § 106 of the Copyright Act. That is why a download restriction is not an access restriction under the DMCA, and why measures that prohibit downloading but not access fall outside § 1201(a). *Hattler v. Ashton*, 2017 WL 11634742, 5-6 (C.D. Cal. 2017) (the statute is properly read "to exclude technologies that permit access to

copyrighted work, but restrict copying."); *MDY Indus. v. Blizzard*, 629 F.3d 928 (9th Cir. 2010) (noting that § 1201(a) targets "access to a protected work," as distinct from measures that regulate copying). That is why a purported obligation to prevent downloading does not imply an obligation to prevent automated access either to google.com or the works displayed there.

And even if there were no distinction between "download" and "access" restrictions, Google's characterization of its agreement does not imply authority to employ either type of measure. As Google phrases it, the contract limits the services Google can *offer*; it does not impose any general or specific security or access control measure. The agreement may bar Google from selling or sublicensing the content to third-parties. It may even prevent Google from placing a download button next to the content. But it does not strip Google of its unfettered discretion to design and implement any specific access controls, and it does not put Google in breach if it decides not to prevent automated access to its public website.

Because that breaks the logic in Google's argument – that it has implied authority to implement SearchGuard because it was "required" to do so – Google has failed to cure the deficiency the Court identified in its Dismissal Order.

***D. The Amended Complaint Does Not Plausibly Allege that the Reddit Agreement Granted Copyright Owner Authority to Implement SearchGuard***

Google's allegations about its Reddit agreement also fail to plausibly allege copyright owner authorization. Google does not plausibly allege that the information appearing in Google's search results is copyrighted, that Reddit owns the copyright to its users' content, or that the agreement confers the authority to implement SearchGuard.

**1. *Google Fails to Allege that Reddit-Related Content It Incorporates Into its Search Results is Copyrightable.***

The Amended Complaint does not identify a single Reddit post that appears in any search result, or any portion of a search result scraped by SerpApi. This is fatal because under this Court's Dismissal Order – which dismissed *with prejudice* any claim relating to non-copyrighted content – Google was required to allege that the content SerpApi accessed was subject to copyright protection. It did not do so.

To determine whether SerpApi circumvented any access control protecting a copyrighted work, this Court must first determine what content is subject to copyright protection. Here, Google does not allege that Google search results incorporate the whole of Reddit.com. So, the relevant question is not whether copyrighted content appears on Reddit's own platform. The relevant question is what appears on google.com. That has not been alleged.

As the *Reddit* court explained, the Reddit-related content on Google.com consists only of snippets. And "these snippets tend to be brief (based on the pleadings, they do not appear to exceed a few sentences), and to be excerpted from a single post or comment[.]" *Reddit, Inc. v. SerpApi LLC*, 2026 WL 2210094, 3 (S.D.N.Y. 2026). So "the relevant question is whether the snippets of Reddit posts … qualify for Copyright Act protection, not whether the full posts on Reddit themselves are copyrightable." *Id.* at *14. Here, Google has not alleged any *facts* from which this Court can infer that Reddit-related information displayed in Google's search results qualifies for protection. As such, its allegations do not overcome this Court's prior dismissal with prejudice.[3]

### 2. *Google Fails to Allege that Reddit's Users Have Granted Google the Authority to Implement SearchGuard.*

Google does not allege that it is in contractual privity with Reddit's users. Nor does it allege that any Reddit User has granted Google the authority to implement SearchGuard. This is fatal because Reddit does not own the copyright to its users' content. This Court's Dismissal Order required Google to allege that it has the "authority of the copyright owner." But there is no allegation that Reddit's users have authorized anything at all.

In its Amended Complaint, Google asserts that "Reddit has the power [to authorize SearchGuard] both for its own copyrighted works as well as the works that Reddit's users licensed to it." AC ¶ 31. This is yet another unquoted, undisclosed characterization of legal authority with no citation and no factual basis. And it is an allegation of the authority Reddit – a non-owner third-

[3] This case stands in a different procedural posture than *Reddit*. There, Reddit included allegations about the copyrighted nature of specific Reddit posts. The Court simply deferred the question of whether those posts qualified for copyright protection. Here, this Court already dismissed claims relating to non-copyrighted content, so Google was required to allege content that qualified for protection. It did not do so.

party – supposedly possesses, not an allegation of authorization any copyright owner actually provided. Only the latter is relevant under the DMCA.

The allegation that Reddit has the "power" to authorize Google to implement SearchGuard on behalf of its users is a conclusory allegation about legal rights governed by contracts Google has not placed before the Court. Just as the Court already ruled that Google could not claim implied authority from all its own licenses, it cannot claim Reddit is implicitly authorized by its users to let Google implement SearchGuard, especially where the measure has nothing to do with reddit.com, but an entirely different website.

Google does not identify or allege facts about the license from Reddit users to Reddit for user-owned content, but it presumably emanates from Reddit's User Agreement.[4] It grants Reddit usage rights for distribution of user content for Reddit's benefit; it does not require or authorize Reddit (or others) to implement access restrictions. It provides:

> You retain any ownership rights you have in Your Content, but you grant Reddit the following license to use that Content:
>
> When Your Content is created with or submitted to the Services, you grant us a worldwide, royalty-free, perpetual, irrevocable, non-exclusive, transferable, and sublicensable ***license to use, copy, modify, adapt, prepare derivative works of, distribute, store, perform, and display Your Content*** and any name, username, voice, or likeness provided in connection with Your Content in all media formats and channels now known or later developed anywhere in the world.
>
> This license includes ***the right for us to make Your Content available for syndication, broadcast, distribution, or publication by other companies, organizations, or individuals who partner with Reddit***. For example, this license includes ***the right to use Your Content to train AI and machine learning models***, as further described in our Public Content Policy.

These are conventional exploitation rights; none addresses who may impose a technological access condition on the work, or authorizes Reddit to delegate that authority downstream.

Reddit's Public Content Policy, referenced in its license grant, provides:

---

[4] Reddit, Inc., *Reddit User Agreement* (last revised May 26, 2026), https://redditinc.com/policies/user-agreement.

> Most of Reddit's platform is ***public and accessible to everyone***, even without an account. This is intentional. We believe in the open internet and in ***keeping Reddit publicly accessible*** to foster human learning and research, and to ensure Reddit is a place where all people can find community, belonging, and empowerment.
>
> As a result, ***anyone who has access to the internet can see public posts***, comments, usernames, profiles, karma scores, and related metadata (collectively, "public content").… If you choose to contribute public content on the Reddit platform, ***you are making that public content available to the general public***.[5]

This is the opposite of a public access restriction. It affirms that the information is intended to be publicly accessible, without restriction. The Content Policy then describes what Reddit prohibits its licensees from doing with the data (*e.g.*, "access or display sexually explicit content"), but says nothing about authorizing licensees to impose automated access restrictions on users' behalf.

Even if users had granted Reddit authority to impose such restrictions, Google has not plausibly alleged that its agreement with Reddit conveyed that authority. Google does not allege that the agreement confers express authorization; it again asks this Court to infer that implied-in-law authority *sub silencio* from this unseen contract. That inference is unwarranted for two reasons.

*First*, Google alleges that the paraphrased agreement "directs Google not to enable third parties to extract and independently commercialize the licensed content." AC ¶ 31. But "extraction and commercialization" is copying and selling—rights covered by Section 106 of the Copyright Act, not "access" governed by Section 1201(a) of the DMCA. *See supra*.

*Second*, an agreement preventing Google from "enabling" third party extraction and commercialization may restrict what Google can affirmatively *offer*, but it does not restrict Google's freedom to permit or prohibit automated access to google.com. Nothing in the Amended Complaint suggests that Google would be in breach of the Reddit agreement every time a user takes a screenshot of a Reddit post from google.com and uses it for commercial purposes. The

---

[5] Reddit, Inc., *Public Content Policy*, (updated May 29, 2025), https://support.reddithelp.com/hc/en-us/articles/26410290525844-Public-Content-Policy.

Court, therefore, cannot conclude that the Reddit agreement supplies implied-in-law authorization to employ anti-bot measures restricting automated access to Google's public website.

### 3. *Google Fails to Allege that Reddit Granted Google the Authority to Implement SearchGuard for its Own Copyrighted Content.*

Google suggests the Reddit agreement confers authorization for Reddit's own content. But Google does not allege that Reddit's own content appears in its search results or that it qualifies for copyright protection. Nor do the two non-contractual statements Google cites plausibly establish authorization to implement SearchGuard.

Google first quotes, but then alters, Reddit's paraphrase of its agreement with Google from Reddit's Amended Complaint in the *Reddit* litigation. AC ¶ 31. But Reddit's complaint also does not *quote* the agreement. So now we have Google's altered characterization of Reddit's characterization of an unquoted agreement about legal terms neither has placed before any court. The Court need not, and should not, accept these characterizations of the parties' legal rights.

But even taking that allegation at face value, it does not supply the requisite authorization. Google alleges that Reddit "has always authorized its partners, including Google, to protect [licensed] content from *misuse* and prevent *unauthorized access* to that data." AC ¶ 31. This does not define "misuse" or "unauthorized access," and does not encompass, expressly or by implication, mere automated access to Google's public website. If the Reddit Agreement gave Reddit enforceable rights to force Google to restrict access to Google.com, it would have done so expressly, and those terms would have been alleged.

Second, Google retreats from its claim that the Reddit Agreement "directed" Google to implement SearchGuard, turning instead to parol evidence of ex-contractual oral authorization. Specifically, Google alleges that "when Reddit suspected that scrapers like SerpApi were accessing … the content that Reddit had licensed to Google, it specifically asked Google to employ technical measures to prevent" it. AC ¶ 32. But contractual rights relating to licensed intellectual property are governed by the license agreement itself. Parol evidence is not admissible to prove

the rights conveyed under that agreement unless this Court first finds it is ambiguous. For that reason, parol evidence cannot supplant the actual terms of the license agreement.

### *E. Google's Privacy Policy Does Not Confer Authorization "of the Copyright Owner."*

Google's final claimed source of copyright owner authority is its Privacy Policy. But its Privacy Policy is not a copyright license, and does not confer any "authorization" to implement SearchGuard. Google does not claim that the Privacy Policy supplies it authority to implement SearchGuard, or that without it, Google would be powerless to employ such measures. Nor does Google claim that the Privacy Policy requires it to use technological means to block automated access to its public website.

The copyright license agreement appears in Google's Terms of Service, not its Privacy Policy. The Terms of Service merely give Google a non-exclusive license to display the content. It does not convey authorization to restrict access to google.com or implement SearchGuard.[6]

The Privacy Policy does not rectify that omission. The Policy is not an "agreement" with users, and nothing in it requires, seeks, or contemplates user consent. It is also devoid of authorization to implement copyright control measures. It does not mention copyright or SearchGuard at all. It merely informs users of the data Google collects and what it does with the data, explaining "what information we collect, why we collect it, and how you can update, manage, export, and delete your information."[7] It governs user information—*e.g.*, "the information Google collects" about its users, such as "name and [] password," "phone number [and] payment information," "email address," users' "apps, browsers & devices," their "activity in our services," their "location information," and "the content [users] create, upload or receive from others when

---

[6] See *Google Terms of Service*, Munkittrick Decl., Ex. A. The Terms of Service are incorporated by reference into the Complaint because Google relies on its user *agreement* as the basis for its claims, and the Terms of Service is an integral part, if not the sole source, of any such agreement.

[7] See *Google Privacy Policy*, Munkittrick Decl., Ex. B at 1.

using [Google's] services" such as the "email you write and receive, photos and videos you save, docs and spreadsheets you create, and comments you make on YouTube videos." *Id.* at 2-5.[8]

This is not the type of material appearing in public search results covered by SearchGuard. Google does not claim to show users' personal emails, photos, or other content in public search results. In the Amended Complaint, Google claims it promises to protect such content from "unauthorized access." AC ¶ 33. But the only "unauthorized access" the Policy mentions applies to "information [Google] hold[s]" about its users. Ex. B, at 17. It describes risks to personal information and account security, not access to copyrighted content. It identifies encryption "to keep your data private," Security Checkup and two-step verification "to help you protect your account," physical security measures "to prevent unauthorized access to our systems," and restrictions on employee and contractor access to "personal information." *Id.* This is ordinary data-security language protecting accounts and systems, not copyright-owner authorization to control access to google.com or the works on it.

At most, the Policy explains how Google will handle user data.[9] It does not address public search results except to say that "Google's Search engine may index" user information if publicly available elsewhere on the web, "and display it to other people if they search for" it. *See* Ex. B, at 6. Indeed, in defending its own scraping practices, Google (represented by the same counsel as here) has stated that "web scraping does not collect 'personal information,' which by definition excludes 'publicly available' information." *See Google's Motion to Dismiss*, *J.L. v. Google LLC*, 23-cv-03440, ECF 20-21, n.6 (N.D. Cal. Oct. 16, 2023).

---

[8] Google alleges the Privacy Policy covers "licensed content [users] supply," (AC ¶ 31), but the only use of the word "license" in the Policy is "driver's license."

[9] The *Reddit* decision reinforces the point. In finding Reddit's user-authorization allegations sufficient, the court relied on Reddit's copyright license and Public Content Policy, while separately rejecting reliance on a user privacy provision promising to protect personal information. *Reddit*, 2026 WL 2210094, at *18 n.19. A promise to protect personal information, the court explained, does not itself establish authority to protect users' copyrighted content. *Id.* Google's Privacy Policy is no different.

Google also does not identify who purportedly conferred that authority. Google refers to "users" and "user-uploaded and licensed content," but a user is not necessarily the "copyright owner." AC ¶ 33. So, even if the policy applied to all "users," it still does not establish copyright owner authorization for anything.

## III. PRESERVATION OF PREVIOUSLY RAISED GROUNDS.

In dismissing the initial Complaint, the Court rejected SerpApi's other grounds for dismissal: that Google lacks standing to sue under the DMCA; that SearchGuard is not an "effective" technological measure that "controls access" to a copyrighted work; that Google has not adequately alleged "circumvention;" that Google has not adequately alleged "trafficking in circumvention technology;" and that Google has not alleged a cognizable injury under the DMCA. SerpApi respectfully renews each of those arguments to ensure preservation for appellate review.

***Google Lacks Standing to Sue Under the DMCA.*** Google, as a non-exclusive licensee and website operator, rather than a copyright owner, falls outside the DMCA's zone of interests, and cannot show its alleged injuries were proximately caused by a violation of Section 1201. ECF 22 at 6-11. The Amended Complaint does not cure this defect.

***SearchGuard is Not an Effective Technological Measure that Controls Access to a Copyrighted Work.*** SearchGuard is not an effective technological measure under the DMCA for three independent reasons. ECF 22 at 12-19. *First*, SearchGuard does not control access to copyrighted content, since the underlying content remains accessible elsewhere on the open internet. *Id*. *Second*, SearchGuard is not an effective copyright control because it is not reasonably designed to protect access to copyrighted content, but is instead designed to protect google.com from automated access regardless of the presence or absence of copyrighted content. *Id*. *Third*, measures designed to prevent automated access to public websites are not effective copyright control measures because no measure is "require[d] … to gain access to the work," for reasons explained in *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022). The Amended Complaint does not cure these defects.

***Google Fails to Allege "Circumvention" Within the Meaning of Section 1201(a)(3)(A).*** Google's allegations do not describe "circumvention" as Congress defined that term: to "descramble," "decrypt," or "avoid, bypass, remove, deactivate, or impair" a technological measure "without the authority of the copyright owner." ECF 22 at 19-20. The Amended Complaint does not cure this defect.

***Google Fails to Allege "Trafficking" in Circumvention Technology Under Section 1201(a)(2).*** Google's trafficking claim fails for the independent reasons that Google does not allege that SerpApi sells or offers any "circumvention technology" as such; that SerpApi's service is not "primarily designed or produced for the purpose of circumventing" a technological measure, given that the overwhelming majority of the content it retrieves is not alleged to be copyrighted; and that SerpApi's service has substantial "commercially significant" uses apart from any alleged circumvention, since licensed Knowledge Panel content is only a small fraction of the search results SerpApi's customers retrieve. ECF 22 at 22-23. The Amended Complaint does not cure these defects.

***Google Fails to Allege a Cognizable Injury Under the DMCA.*** Section 1203(a) requires an *actual* injury caused by a Section 1201 violation. Google does not allege any such injury. ECF 22 at 23-24. The Amended Complaint does not cure this defect.

## IV. CONCLUSION

For these reasons, the Court should dismiss the First Amended Complaint with prejudice.

Dated: August 24, 2026

Respectfully submitted,

/s/ *Colin R. Kass*

Colin R. Kass (*pro hac vice*)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 416-6890
ckass@proskauer.com

David A. Munkittrick (*pro hac vice*)
Joseph E. Clark (SBN 281021)
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000
dmunkittrick@proskauer.com
jclark@proskauer.com

Heather Tovar (SBN 237004)
Ad Astra Law Group, P.C.
582 Market Street, 17th Floor
San Francisco, CA 94104
(415) 795-3579
htovar@astralegal.com

*Attorneys for Defendant SerpApi, LLC*